Pro Se 7 (Rev. 09/16) Complaint for Employment Discrimination

# UNITED STATES DISTRICT COURT

for the

Middle District of Florida

| | | |
|---|---|---|
| Shufeng Zhou | ) | Case No. 8:17 cv 1814 T 13 T6w |
| | ) | *(to be filled in by the Clerk's Office)* |
| | ) | |
| *Plaintiff(s)* | ) | |
| *(Write the full name of each plaintiff who is filing this complaint. If the names of all the plaintiffs cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | Jury Trial: *(check one)* ☑Yes ☐No |
| | ) | |
| -v- | ) | |
| JUDY GENSHAFT, CHARLES J. LOCKWOOD, KEVIN B. SNEED, JOHN S. CURRAN and UNIVERSITY OF SOUTH FLORIDA | ) | |
| | ) | |
| *Defendant(s)* | ) | |
| *(Write the full name of each defendant who is being sued. If the names of all the defendants cannot fit in the space above, please write "see attached" in the space and attach an additional page with the full list of names.)* | ) | |

CLERK, US DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA, FLORIDA

2017 JUL 31 AM 9:54

FILED

## COMPLAINT FOR EMPLOYMENT DISCRIMINATION

I.    **The Parties to This Complaint**

   A.    **The Plaintiff(s)**

      Provide the information below for each plaintiff named in the complaint. Attach additional pages if needed.

      | | |
      |---|---|
      | Name | Shufeng Zhou |
      | Street Address | 16410 Burniston Dr |
      | City and County | Tampa |
      | State and Zip Code | FL 33647 |
      | Telephone Number | 813 505 1501 |
      | E-mail Address | shufengzhou2006@hotmail.com |

   B.    **The Defendant(s)**

      Provide the information below for each defendant named in the complaint, whether the defendant is an individual, a government agency, an organization, or a corporation. For an individual defendant, include the person's job or title *(if known)*. Attach additional pages if needed.

TRA-V4983
#400

Pro Se 7 (Rev. 09/16) Complaint for Employment Discrimination

Defendant No. 1

| | |
|---|---|
| Name | Judy Genshaft |
| Job or Title *(if known)* | President |
| Street Address | 4202 East Fowler Avenue, CGS 401 |
| City and County | Tampa |
| State and Zip Code | FL 33620 |
| Telephone Number | (813) 974-2781 |
| E-mail Address *(if known)* | jgensha@usf.edu |

Defendant No. 2

| | |
|---|---|
| Name | Charles J. Lockwood |
| Job or Title *(if known)* | Senior Vice President |
| Street Address | 12901 Bruce B. Downs Blvd., MDC02 |
| City and County | Tampa |
| State and Zip Code | FL 33612 |
| Telephone Number | (813) 974-6010 |
| E-mail Address *(if known)* | cjlockwood@health.usf.edu |

Defendant No. 3

| | |
|---|---|
| Name | Kevin B. Sneed |
| Job or Title *(if known)* | Dean, College of Pharmacy |
| Street Address | 12901 Bruce B. Downs Blvd. |
| City and County | Tampa |
| State and Zip Code | FL 33612 |
| Telephone Number | (813) 974-6210 |
| E-mail Address *(if known)* | ksneed@health.usf.edu |

Defendant No. 4

| | |
|---|---|
| Name | John S. Curran |
| Job or Title *(if known)* | Associate Vice President |
| Street Address | 12901 Bruce B. Downs Blvd. |
| City and County | Tampa |
| State and Zip Code | FL 33612 |
| Telephone Number | (813) 974-6103 |
| E-mail Address *(if known)* | jcurran@health.usf.edu |

**C.   Place of Employment**

The address at which I sought employment or was employed by the defendant(s) is

| | |
|---|---|
| Name | University of South Florida |
| Street Address | 4202 East Fowler Avenue |
| City and County | Tampa |
| State and Zip Code | FL 33620 |
| Telephone Number | (813) 974-1100 |

## II.   Basis for Jurisdiction

This action is brought for discrimination in employment pursuant to *(check all that apply)*:

☑   Title VII of the Civil Rights Act of 1964, as codified, 42 U.S.C. §§ 2000e to 2000e-17 (race, color, gender, religion, national origin).

*(Note:  In order to bring suit in federal district court under Title VII, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐   Age Discrimination in Employment Act of 1967, as codified, 29 U.S.C. §§ 621 to 634.

*(Note:  In order to bring suit in federal district court under the Age Discrimination in Employment Act, you must first file a charge with the Equal Employment Opportunity Commission.)*

☑   Americans with Disabilities Act of 1990, as codified, 42 U.S.C. §§ 12112 to 12117.

*(Note:  In order to bring suit in federal district court under the Americans with Disabilities Act, you must first obtain a Notice of Right to Sue letter from the Equal Employment Opportunity Commission.)*

☐   Other federal law *(specify the federal law)*:

☐   Relevant state law *(specify, if known)*:

☐   Relevant city or county law *(specify, if known)*:

## III.   Statement of Claim

Write a short and plain statement of the claim. Do not make legal arguments. State as briefly as possible the facts showing that each plaintiff is entitled to the damages or other relief sought. State how each defendant was involved and what each defendant did that caused the plaintiff harm or violated the plaintiff's rights, including the dates and places of that involvement or conduct. If more than one claim is asserted, number each claim and write a short and plain statement of each claim in a separate paragraph. Attach additional pages if needed.

A.   The discriminatory conduct of which I complain in this action includes *(check all that apply)*:

- [ ] Failure to hire me.
- [x] Termination of my employment.
- [ ] Failure to promote me.
- [ ] Failure to accommodate my disability.
- [ ] Unequal terms and conditions of my employment.
- [x] Retaliation.
- [ ] Other acts *(specify)*: _____

  *(Note: Only those grounds raised in the charge filed with the Equal Employment Opportunity Commission can be considered by the federal district court under the federal employment discrimination statutes.)*

B.   It is my best recollection that the alleged discriminatory acts occurred on date(s)

  **March 23, 2016**

C.   I believe that defendant(s) *(check one)*:

- [x] is/are still committing these acts against me.
- [ ] is/are not still committing these acts against me.

D.   Defendant(s) discriminated against me based on my *(check all that apply and explain)*:

- [x] race _____
- [ ] color _____
- [ ] gender/sex _____
- [ ] religion _____
- [ ] national origin _____
- [ ] age *(year of birth)* _____ *(only when asserting a claim of age discrimination.)*
- [x] disability or perceived disability *(specify disability)*

  **Depression & Acid reflux** _____

E.   The facts of my case are as follows. Attach additional pages if needed.

I was employed by University of South Florida since August 21, 2010 as the Founding Chair of
Department of Pharmaceutical Science & Professor, College of Pharmacy, University of South Florida,
Tampa, FL 33620. I was appointed to be the Associate Dean for International Research in 2011. From
2013 to 2014, I was appointed as the Associate Vice President of Global Medical Development.
See attached pages.

*(Note: As additional support for the facts of your claim, you may attach to this complaint a copy of
your charge filed with the Equal Employment Opportunity Commission, or the charge filed with the
relevant state or city human rights division.)*

## IV. Exhaustion of Federal Administrative Remedies

A.   It is my best recollection that I filed a charge with the Equal Employment Opportunity Commission or
my Equal Employment Opportunity counselor regarding the defendant's alleged discriminatory conduct
on *(date)*

December 21, 2015

B.   The Equal Employment Opportunity Commission *(check one)*:

☐   has not issued a Notice of Right to Sue letter.

☑   issued a Notice of Right to Sue letter, which I received on *(date)*   05/11/2017           .

*(Note: Attach a copy of the Notice of Right to Sue letter from the Equal Employment
Opportunity Commission to this complaint.)*

C.   Only litigants alleging age discrimination must answer this question.

Since filing my charge of age discrimination with the Equal Employment Opportunity Commission
regarding the defendant's alleged discriminatory conduct *(check one)*:

☐   60 days or more have elapsed.

☐   less than 60 days have elapsed.

## V. Relief

State briefly and precisely what damages or other relief the plaintiff asks the court to order. Do not make legal
arguments. Include any basis for claiming that the wrongs alleged are continuing at the present time. Include the
amounts of any actual damages claimed for the acts alleged and the basis for these amounts. Include any punitive
or exemplary damages claimed, the amounts, and the reasons you claim you are entitled to actual or punitive
money damages.

University of South Florida's discrimination against me has caused bad damages on my career and health. I ask the court to order University of South Florida to pay me $3.0 million dollars to cover all these direct and indirect damages to me and reinstate my positions as a professor, Associate Dean and Chair at COP, USF immediately.

## VI.  Certification and Closing

Under Federal Rule of Civil Procedure 11, by signing below, I certify to the best of my knowledge, information, and belief that this complaint: (1) is not being presented for an improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation; (2) is supported by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the complaint otherwise complies with the requirements of Rule 11.

### A.    For Parties Without an Attorney

I agree to provide the Clerk's Office with any changes to my address where case-related papers may be served. I understand that my failure to keep a current address on file with the Clerk's Office may result in the dismissal of my case.

Date of signing:          08/31/2017

Signature of Plaintiff

Printed Name of Plaintiff      Shufeng Zhou

### B.    For Attorneys

Date of signing:

Signature of Attorney

Printed Name of Attorney

Bar Number

Name of Law Firm

Street Address

State and Zip Code

Telephone Number

E-mail Address

EEOC Form 161 (11/09)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

| To: | **Shu-Feng Zhou, PhD**<br>**16410 Burniston Dr.**<br>**Tampa, FL 33647** | From: | **Tampa Field Office**<br>**501 East Polk Street**<br>**Room 1000**<br>**Tampa, FL 33602** |

| ☐ | *On behalf of person(s) aggrieved whose identity is*<br>*CONFIDENTIAL (29 CFR §1601.7(a))* | |

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| **511-2016-00676** | **Beverly Collins, Investigator** | **(813) 202-7917** |

### THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

| | |
|---|---|
| ☐ | The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC. |
| ☐ | Your allegations did not involve a disability as defined by the Americans With Disabilities Act. |
| ☐ | The Respondent employs less than the required number of employees or is not otherwise covered by the statutes. |
| ☐ | Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge |
| ☒ | The EEOC issues the following determination:  Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes.  This does not certify that the respondent is in compliance with the statutes.  No finding is made as to any other issues that might be construed as having been raised by this charge. |
| ☐ | The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge. |
| ☐ | Other *(briefly state)* |

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost.  (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that **backpay due for any violations that occurred more than 2 years (3 years)** before you file suit may not be collectible.

On behalf of the Commission

*Evangeline Hawthorne*

MAY 11 2017

Enclosures(s)

**Evangeline Hawthorne, Director**

*(Date Mailed)*

cc:
**UNIVERSITY OF SOUTH FLORIDA MSSC**
**12901 Bruce B. Downs Blvd.**
**MDC 62**
**Tampa, FL 33612**



UNITED STATES POSTAGE
$ 003.810
PITNEY BOWES
MAY 11 2017
02 1P
0000841491
MAILED FROM ZIP CODE 33602

CERTIFIED MAIL

7016 0600 0001 0436 2701

TAMPA FIELD OFFICE
EQUAL EMPLOYMENT OPPORTUNITY
TIMBERLAKE FEDERAL B
501 E. POLK STREET,
TAMPA, FLORIDA

OFFICIAL BUSINESS
PENALTY FOR PRIVATE USE, $300

TAMPA
335
11 MAY '27
PM 5 L

33647-278910

I was born on February 16, 1966, in China. My wife Mrs Judy Liang is a full-time Teaching Laboratory Manager at COP, USF Health. My daughter Helen is 22 who works at Temple University now and my son Kevin is 20 who is a student at the University of Florida, Gainesville, FL.

My supervisor was Dr. Kevin Sneed, the Dean of USF Health COP and Senior Associate Vice President, USF Health, USF. I reported to him. Dr Sneed is an African American and his wife Mrs. Julie Sneed is a magistrate judge in the Middle District of Florida Tampa Division Court. Dr. Sneed reports to Professor Charles J. Lockwood, Senior Vice President for Health Sciences, & Dean of Morsani College of Medicine, USF Health, USF.

In the past 5 years, I have been working very diligently to assist Dr. Sneed to set up our new Pharmacy Doctoral program at USF, the Department of Pharmaceutical Sciences, and the Research facilities and capabilities at COP. In July 2015, our PharmD program has successfully gained full accreditation from Accreditation Council of Pharmacy Education (ACPE), Chicago, IL. My annual performance evaluation by Dr. Sneed shows "excellent".

I have been serving above administration titles fully according to all the policies and regulations of College, USF Health and USF. In addition to my heavy administration duties from 2010 to 2016, I also:

- have set up and have been teaching 3 Pharm.D. core courses and serving as the coordinator or co-coordinator for these courses.
- have published more than 180 peer-reviewed journal papers with me as the corresponding author for most of these papers. I am one of the most productive faculty in USF (top 3).
- am the winner of 2014 USF Research and Innovation Award (only 4 winners in total that year).
- am one of the highly cited researchers based on Thomason Reuter in 2014, 2015 and 2016 (only 4 faculty from USF; only 15 in Florida).
- have filed more than 20 patent applications with 2 of them are being commercialized.
- have trained 2 Ph.D. students, 8 postdoc fellows, and more than 80 international visiting scholars and students.
- have gained 3 industrial grants. I have submitted 6 NIH grant applications. I am presently writing 3 R01 grant applications and plan to submit in February 2016.
- Have served as the senior consultant and expert panel member for World Health Organization, National Institute of Health, U.S. Pharmacopeia, etc.

Clearly, my overall contribution to USH COP in the past years is very significant and my performance is outstanding based on our evaluation criteria.

On November 16, 2015, Dr. Sneed met with me at his office and showed me a letter, which was signed by Professor Charles J. Lockwood. The letter notifies me that my

appointment will end on February 14, 2016. I immediately have affirmed my disagreement to this letter and refused to sign on it. I told him this was a very unfair, discriminatory and retaliatory treatment to me as an employee of USF. During this meeting, he also told me my tenure application to USF COP had been rejected by him.

On November 18, 2015, I formally initiated internal grievance appeal to our President Genshaft, Provost Wilcox, and Dr. Charles Lockwood. In my grievance letter to our President Genshaft and Dr Lockwood, I highlighted that Dr. Sneed was making bad retaliation against me since I knew his illegal and shameful prostitute buying behaviors when he visited Guangdong and Guiyang of China in 2011 and 2012. When he visited China in 2011 and 2012 on behalf of USF, I went together with him. I told them Dr. Sneed had started discriminating, retaliating and suppressing me since 2015. He had refused any normal requests from me or my office. On September 9, 2015, Dr. Sneed met with me at his office and he was very angry at me because he thought I would expose his prostitute buying in China to other people or the public. He threatened me to discontinue my job and investigate me. On September 24, 2015, Dr Sneed invited me for a working lunch at Ho Ho Choy Restaurant at 1441 E Fletcher Ave #125, Tampa, FL 33613. During this lunch, he was very agitated and kept threatening me and affirmed that my career had ended at USF. He also instructed me to empty my research laboratory located at USF MDC building before the end of 2015.

On November 18, 2015, I complained to Florida Commissioner of Human Rights. On November 22, 2015, I formally reported the prostitute buying of Dr. Sneed in 2011 and 2011 in China to our President Genshaft, Provost Wilcox, and Dr. Lockwood.

However, on November 23, 2015, Dr. Sneed and Dr. John Curran (the Associate Vice President for Faculty and Academic Affairs) showed me a new letter and asked me to sign it. In this letter, they forced me to work at home and restricted me from entry into USF COP premises and my own office and laboratories. From that day on, my USF email was disabled and my access to USF intranet was blocked. They also took away my office computer.

On November 30, 2015, Dr. Lockwood issued a written reprimand letter to me. He reprimanded my lawful complaints and threatened to terminate my job.

Our president instructed USF deputy general counsel Mr. Gerard Sollis to take over the case on November 30, 2015. And then another USF deputy general counsel Mr. Robert Pelaia is also engaged in my case since December 22, 2015.

On November 24, 2015, I retained the attorney Ms. Cynthia N Sass and she has then appointed her colleague Mrs. Janet Wise to represent me. She also recommend me to criminal attorneys Ms. Katherine Yanes and Mr. James Felman.

On December 14, 2015, we got a draft Settlement Agreement from Mr. Gerard Sollis. In this draft, USF allows me to resign with good standing and without wrongdoing. The end date is also Feb 14, 2016. But I have to give up all legal rights when USF agrees to my

resignation. I must release Dr. Sneed and other people and will not sue any of them. The settlement agreement is unfair to me but my attorneys tried persuading me to accept it. I refuse the settlement and asked my attorneys not to represent me anymore on December 17, 2015.

On December 25, 2015, my attorney Mr. Yang Wen in China send the witness's testimony on Dr. Sneed's prostitute buying in 2012 in Guizhou of China to our President Genshaft, Mr. Sollis, and Mr. Palaia.

On January 8, 2016, I received the third letter signed by our Senior Vice President Dr. Charles J. Lockwood. He advised me that my Chair and Associate Dean titles at College of Pharmacy were removed. He has extended my final date at USF from Feb 14, 2016 to Nov 16, 2016 as a full-time professor at USF.

On January 11, 2016, I wrote a letter to Dr. Lockwood and proposed to him that if he could reinstate my positions at USF College of Pharmacy and as a return I would cancel my charges against Dr. Sneed and other people and would not sue any people in USF. But so far USF has not responded to my proposal.

On January 14, 2016, I received a letter signed by Ms. Olga J. Joanow on behalf of Dr. Charles J. Lockwood. She advised me that my grievance complaint had been denied by USF Health.

Since November 23, 2015, Dr. Sneed, Dr. Curran and Dr. Lockwood have been conducting a secret and intensive investigation on what I have done for USF in the past years to identify my "wrong-doings". They have hijacked my email and prohibited me to get into my office in any cases.

On February 18, 2016, I received a letter from Dr. Lockwood stating that I would be fired due to cause, but I refused his claim.

On March 24, 2016, I received a letter from Dr. Lockwood and he notified me I have been fired by USF. He listed a number of my "mistakes and violations of USF rules" that are totally unverified and confirmed. I asked for a formal grievance but it was refused by him on June 23, 2016.

Since November 16, 2015, I am in a huge stress and my family members are very concerned about my situations. My academic work has been totally disrupted. My reputation and career have been seriously damaged.

Since January 8, 2016, I am in worse and desperate situations since my basic academic rights have been all deprived by Dr. Sneed, Dr. Curran, and Dr. Lockwood. I cannot get access to my USF email and my office, my research laboratory is closed, I cannot submit my grant applications to NIH, I cannot get access to my research grants, and I am isolated from my colleagues at College of Pharmacy, my PhD students, and my research staff.

Dr. Lockwood and Dr. Curran have refused to investigate the prostitute buying behaviors and misconducts of Dr. Sneed. On the contrary, they both are assisting Dr. Sneed aggravate the retaliation and persecution on me since November 2015.

On February 15, 2016. I wrote a letter to our President Genshaft. In this letter, I stated that "As the Founding Chair and Associate Dean at College of Pharmacy of USF for 5 and half years, I am one of the major contributors for the successful setup and full accreditation of our new Pharmacy program. I am one of the most productive professors with the highest scientific influence at USF based on the data of Thomson Reuters in 2014, 2015 and 2016. I have been working for 14 hours every day for USF in the past 5 and half years. But now I have become the largest victim of retaliation and persecution due to whistle-blowing in the history of USF since it was founded in 1956.

Since my workload was so high and worked for 14-16 hours per day from 2010 to 2016, I have suffered bad gastroesophageal reflux disease (GERD), insomnia and depression since 2011. I worked so hard for USF when I tolerated these diseases.

4

# 广 东 宏 安 信 律 师 事 务 所

December 24, 2015

Dear President Genshaft,

I am Mr Yang Wen, a senior attorney working at GongdongHongan Law Office located at Guangzhou, Guangdong, China. My attorney license number is 14401198810278196.

Professor Shufeng Zhou, the professor, Chair and Associate Dean at your College of Pharmacy, USF has appointed me as his attorney in China.

I am writing to confirm the followings:

The testimony witnessing the whoring of Dr Kevin Sneed from College of Pharmacy, USF Health when he visited Guiyang of China in April 2012 affirmed by Dr Kings Deng of Guiyang, Guizhou, China, has been verified and his signature is true.

Based on Article 66 of "**Public Security Administration Punishments Law of the People's Republic of China**", adopted at the Standing Committee of the National People's Congress of the People's Republic of China and effective on January 1, 2013,

"*Anyone who whores or goes whoring shall be detained for not less than 10 days but not more than 15 days, and may be concurrently fined not more than 5, 000 yuan. If the circumstances are relatively lenient, he (she) shall be detained for not more than 5 days or shall be fined not more than 500 yuan.*

*Anyone who finds customers for any prostitute at a public place shall be detained for not more than 5 days or shall be fined not less than 500 yuan.*"

According to Article 4 of "**Decision of the Standing Committee of the National People's Congress on the Strict Prohibition against Prostitution and Whoring**" effective from September 4, 1991,

"*With respect to persons who engage in prostitution or whoring, the public security organs in conjunction with departments concerned may, at a designated place, carry out compulsive education in law and morality and force them to participate in productive labour, in order to rid them of the pernicious habits. The term thereof shall range from six months to two years. The specific measures shall be formulated by the State Council.*

*Persons who, after being dealt with by the public security organs, engage in prostitution or whoring again, shall be given reeducation through labor and punished by the public security organs with a fine of not more than 5,000 yuan.*

*All persons who engage in prostitution or whoring shall be forced to go through venereal disease inspection. Persons suffering from venereal diseases shall be given compulsory medical treatment.*"

广 东 宏 安 信 律 师 事 务 所

Therefore, whoring is illegal and punished in China.

If you have any inquiries about this letter, please contact me.

Best regards.

Sign:

Mr Yang Wen, JD, Senior Attorney
Guangdong Hongan Law Office,
83 Chuanbian Road, Yuexiu District, Guangzhou, Guangdong 510030, China.
Tel: +86 20 8383-9409
Email: lawyerwenyang@hotmail.com.

December 22, 2015

**Testimony: witnessing the prostitute buying of Dr Kevin Sneed from College of Pharmacy, USF Health when he visited Guiyang of China in April 2012.**

Dear USF President Genshaft,

My name is Kings Deng, MD & PhD, the Assistant President of Shenqi Ethnic Medical and Pharmaceutical College, Guiyang, Guizhou, China.

I am here writing to confirm and witness the prostitute buying of Dr Kevin Sneed from your College of Pharmacy when he visited with us in Guiyang, Guizhou, China, in April 2012.

On April 19 2012, Dr Kevin Sneed visited Shenqi Ethnic Medical and Pharmaceutical College, Guiyang, Guizhou, China. Our president Mr Zhang and I met with him and showed him our campus. After dinner per Dr Sneed's request, I brought him to a prostitute club where he picked up one young Chinese lady for the special sexual service for about 90 minutes. I paid the service fee for Dr Kevin Sneed.

Thank you for your time and consideration.

Dr Kings Deng, MD, PhD,
Guiyang, Guizhou, China
Tel: +86 13822223718 (Cell);
Email: kingsdeng@163.com

本证为持证人依法获准律师执业的有效证件。持证人执业应当出示本证，请司法机关和有关单位、个人予以协助。

中华人民共和国司法部



# 中华人民共和国
# 律师执业证
Lawyer's License
People's Republic of China

中华人民共和国司法部监制

执业机构　广东宏安信

律师事务所

执业证类别　专职律师

执业证号 14401198810278196

法律职业资格
或律师资格证号





持 证 人　文阳

性　　别　　男

身份证号　440102196212274415

发证日期　2011 年 01 月 28 日

执业机构　广东宏安信
　　　　　　律师事务所

执业证类别　专职律师

执业证号　14401198810278196

法律职业资格
或律师资格证号　0550





持证人　文阳

性　别　男

身份证号　440102196212274415

发证机关　广东省司法厅

发证日期　2011 年 01 月 28 日

---

律师年度考核备案

| 考核年度 | 2012年度 |
|---|---|
| 考核结果 | 称职 |
| 备案机关 | |
| 备案日期 | 有效期至2014年5月31日 |

律师年度考核备案

| 考核年度 | 2013年度 |
|---|---|
| 考核结果 | 称职 |
| 备案机关 | |
| 备案日期 | 有效期至2015年5月31日 |



November 16, 2015

HAND DELIVERY AND CERTIFIED, RETURN RECEIPT

Shufeng Zhou, PhD
Professor
College of Pharmacy
INSERT ADDRESS

      Re: Notice of Non-Reappointment

Dear Dr. Zhou:

At the request of the Dean of the College of Pharmacy, I am writing to provide you with this formal notice of non-reappointment from your position as a Professor (Position Number 17118) with the University of South Florida, College of Pharmacy. The University is providing you with this notice that your 1.00 FTE appointment will end Sunday, February 14, 2016 in accordance with USF Regulation 10.110(3).

Your University Salary will remain at the current level of $148,920.00 through February 14, 2016 which will be your last day of appointment. In addition, Dr. Sneed may elect to provide you with an alternate assignment during the notification period and should he do so he will provide this information to you through a separate written communication. Please make arrangements with Dr. Sneed to use your accrued annual leave between now and February 14, 2016.

The remaining terms and conditions of your employment and the employee benefits that you have selected continue to be in place through the end date, although you are not eligible for any University or College salary increases. If you decide to leave the University prior to February 14, 2016, your salary and benefits will end at that time. No additional notice regarding the end of your employment will be provided.

For further information, please refer to the USF Regulation 10.110 which is available on-line at: http://generalcounsel.usf.edu/regulations/pdfs/regulation-usf10.110.pdf. If you believe this decision is inconsistent with University Regulations, you are entitled to file a grievance within thirty (30) days of the date you initially receive this letter as provided for in USF Regulation 10.113: http://generalcounsel.usf.edu/regulations/pdfs/regulation-usf10.113.pdf.

In order be fully informed of any impact on your benefits, please call Stacy Eyer, USF Human Resources at (813) 974-5718 to schedule a time to discuss this

Shufeng Zhou, PhD
November 16, 2015
Page 2 of 2

matter with her.

If you have any addition al questions, please contact Olga J. Joanow, JD, SPHR,
Director, Faculty Relations, USF Health.

Your contributions to the College of Pharmacy, the University of South Florida,
and USF Health are greatly appreciated. I wish you well in your future endeavors.

Sincerely,

Charles J. Lockwood, MD, MHCM
Senior Vice President, Health Sciences
Dean, Morsani College of Medicine

John B. Curran, M.D.   11/12/15

cc:   Kevin B. Sneed, PharmD, Dean
      John S. Curran, M.D., Associate Vice President for Faculty and Academic
      Affairs
      Olga J. Joanow, J.D., Director, Faculty Relations, USF Health



November 23, 2015

Shu-Feng Zhou, PhD
Professor
College of Pharmacy

HAND-DELIVERY

Dear Dr. Zhou:

This letter concerns your assignment for the remainder of your employment at USF. Effective immediately, your assignment will be to provide individual status reports on each of the researchers who have come to the College of Pharmacy through your efforts during your time at USF. These reports are to contain information about each researcher's activities while they were in residence at the College of Pharmacy and what benefit USF derived from each visit. These efforts do not require you to be present in the College and you are assigned to prepare these reports from an off-site location.

Consistent with this off-campus assignment, your university office is subject to reassignment; therefore, you will need to remove your property from your USF office no later than December 11, 2015. A mutually convenient time to remove your property should be coordinated with the Office of Faculty Affairs and you should contact Olga J. Joanow, Director of Faculty Relations for USF Health. This assignment will not require access to USF email or networks so your access to those systems has been terminated. You still have access to GEMS Self Service via your USF NetID. Please provide alternate contact information to Faculty Affairs and this office as soon as possible (i.e. alternate email and phone number), but no later than November 30, 2015

Other than to collect your property, there is no expectation that you will return to your USF office, the College of Pharmacy, meetings or any work functions, absent a request to do so from the Dean of College or Faculty Affairs. You may continue to access any other part of the USF campus, including the library, on the same basis as any other USF faculty member.

Your employment will continue to be governed by University Regulations, Policies and procedures through the effective date of this non-reappointment. This action is not subject to grievance under USF System Regulations. You may access all USF System Regulations here:

http://generalcounsel.usf.edu/regulations/current-regulations.asp

Thank you for your service to the University of South Florida. Please direct any questions regarding this matter to Olga J. Joanow, 974-1676 or ojoanow@health.usf.edu.

Kevin B. Sneed, PharmD
Senior Associate Vice-President, USF Health
Dean and Professor, College of Pharmacy

John S. Curran, MD
Associate Vice President of
Faculty and Academic Affairs, USF Health

Dr Zhou refused to sign per John Hamm 11/23/15 4:00PM

DEAN'S OFFICE • COLLEGE OF PHARMACY
University of South Florida • 12901 Bruce B. Downs Blvd • MDC30 • Tampa, FL 33612-4749
Phone: 813.974.5699 • FAX 813.974.3244     WITNESS: DET. M. SANTIAGO

Vachiwant Phak



11/29/2015

Re: **Complaining about Senior Associate Vice President Dr John Curran's bad persecution and discrimination against me**

Dear Dr Lockwood,

I hope you are well when I write this complaining letter to you.

Since you issued the non-reappointment letter to me on November 16, 2015, Dr John Curran has augmented his persecution and discrimination against me who is a Chinese. Together with Dr Sneed, Dr Curran further issued a letter to me on November 23, 2015, prohibited me from entering my office and College of Pharmacy area and blocked my USF email and internet access via USF portal. I am also isolated from my PhD students, postdoctoral fellows and visiting scholars who are diligently working for their research projects I have assigned to them. But until now, I am a full-time professor on tenure-track, the Chair of Dept. of Pharmaceutical Sciences, and Associate Dean for International Research at College of Pharmacy, USF Health. On November 23, 20156, Dr Curran and Dr Sneed took away my and my assistant's office computers. These bad persecuting behaviors have disrupted my normal work and duties which are assigned by you on behalf of USF Health and USF. I have to stop writing my manuscripts for publication in journals and R01 grant applications. Dr Curran threatened me he had the power to do these and he can fully represent you, Dr Lockwood.

Because I am unable to enter my office and use my USF email, I cannot work normally for my department and college as a full-time professor, Departmental Chair and Associate Dean. So I am desperately asking you to:

1) Immediately remove Dr John Curran from handling my case and grievance process since he is persecuting and discriminating me badly.
2) Appoint Associate Vice President for Academic Affairs Dr Valarie Parisi (or another person you think he or she is proper) to take over Dr Curran's responsibilities for my case and grievance process.
3) Immediately allow me to restore all my rights in working place at College of Pharmacy, USF Health, including entering my office and laboratories, using USF email and getting access to USF intranet and internet via USF portal, and returning the computers to me and my assistant, etc.

I have retained attorneys to represent me for the following grievance process. I will take legal actions against Dr John Curran for his bad persecution and discrimination against me.

Best regards.

1



Professor Shufeng Zhou, MD & PhD,
Chair of Dept. of Pharmaceutical Sciences,
Associate Dean of International Research
College of Pharmacy, USF Health, Tampa, FL.
Email: shufengzhou2006@hotmail.com
Phone: 813 505 1507 (Mobile); 813 405 4718 (Home).

Cc: Dr, Valerie M. Parisi, MD, MPH, MBA, Senior Associate Vice President of Academic Affairs, USF Health, Vice Dean of Faculty Affairs, Morsani College of Medicine, USF Health
    Dr Edmund Funai, MD, Chief Operating Officer, USF Health, Vice Dean for Administration, Morsani College of Medicine, Vice President for Strategic Development, USF System.

2

January 11, 2016

Professor Charles (Charly) J. Lockwood, MD, MHCM
Senior Vice President, USF Health
Dean, USF Health Morsani College of Medicine, USF
12901 Bruce B. Downs Blvd.,
MDC02
Tampa, FL33612

Re: **My conflicts with Dr Kevin Sneed, Dean of College of Pharmacy, USF Health.**

Dear Professor Lockwood,

Thanks for your letter dated January 8, 2016.

I have joined College of Pharmacy (COP) of USF Health from Australia since August 2010 with
only one main mission — to help Dr Sneed set up the PharmD program at USF Health with
incorporation of a good research component. Now this mission has been achieved and I
thought it was time for me to help Dr Sneed consolidate, improve, and strengthen our PharmD
program.

However, I have lost everything here at USF: job, reputation, recognition, friendship, etc, since
November 16, 2015 when you signed the HR letter to me. Although I keep trying hard, I cannot
find a job from anywhere because: a) my USF office email (szhou@health.usf.edu) has been
hijacked by someone illegally; b) I cannot be contacted via my office phone; and c) I cannot find
anyone from USF Health who is willing to write a recommendation letter for my job hunting. All
potential employers from the US and other countries can easily know my bad situations and
troubles at College of Pharmacy, USF Health. To save myself, I have to keep complaining to key
people, government agencies, etc. But in fact, I am a professor and scientist, not a fighter and
troublemaker. My American dream has totally broken up.

To proceed to resolve my conflicts with Dr Kevin Sneed, Dean of College of Pharmacy, USF
Health, I propose that:

1. Immediately reinstate my positions including Chair of Department of Pharmaceutical
   Sciences and Associate Dean for International Research, responsibilities, and rights at
   College of Pharmacy, USF Health, as those before December 31, 2014. Since 2015, Dr
   Sneed has started encircling, suppressing, discriminating, and retaliating me. My tenure
   application submitted to COP USF Health in June 2015 should be fairly and properly
   reviewed and considered.
2. You and Dr Sneed should ensure that none from USF will suppress, disparage,
   discriminate, and retaliate me when I work at College of Pharmacy, USF Health.
3. The College of Pharmacy, USF Health, should pay me $500,000.00 as compensation for
   the extreme stress and pains I have suffered since November 16, 2015.

1



November 30, 2015

**VIA HAND DELIVERY**

Professor Shu-Feng Zhou, MD, PhD,
Associate Dean for International Research,
Chair of the Department of Pharmaceutical Science, College of Pharmacy
12901 Bruce B. Downs Blvd.
Tampa, Florida 33612

Re:    Written Reprimand

Dear Dr. Zhou:

This is a written reprimand issued under USF Regulation 10.112, *Faculty Misconduct and Incompetence*. As is discussed in more detail below, you appear to have made allegations against colleagues to coerce management to take certain employment actions, absent due process. As such, the conduct described below constitutes misconduct or incompetence as contained in 10.112 (1) (a) (b), and therefore this action is taken with just cause.

On November 17, 2015, you presented Dr. Kevin Sneed, Dean of the College of Pharmacy, with an undated email from a contact of yours in China referencing salacious conduct by Dr. Sneed and Dr. Deschenes, Associate Dean for International Research for the College of Pharmacy. **(Composite Attachment 1)** This conduct allegedly occurred in China in March of 2011. Dr. Sneed and Dr. Deschenes deny any such conduct, but your allegations were referred to appropriate USF offices. It should be noted that on November 16, 2015, Dr. Sneed delivered a Notice of Non-reappointment to you, which I signed. **(Attachment 2)** The timing is relevant because according to Dr. Sneed you threatened to share the email with me, and presumably others, *unless* you were given more time relative to your non-reappointment. Dr. Sneed flatly rejected your offer and as of the date of this letter you have published these allegations to several USF offices, as has your contact. **(Composite Attachment 3)**

On November 26, 2015, you sent an email to this office referring to a "big scandal" once your allegations against Dr. Sneed and Dr. Deschenes were "revealed to the public." **(Attachment 4)** In the same email you stated: "[s]o Dr. Lockwood wake up and do something you should do!" I can only assume this means that you want an employment action taken against USF employees to avoid a scandal, regardless of due process and validation of your claims.

USF employees have the right to challenge employment actions through lawful expression, the university's grievance process or external legal remedies. Matters so received are reviewed and actions are taken, as needed. However, allegations made in an apparent attempt to: (1) coerce management to change a valid employment action; or (2) initiate an employment action without due process will not be tolerated. Please be advised that the same or similar conduct in the future

Professor Shu-Feng Zhou, MD, PhD,
Associate Dean for International Research,
Chair of the Department of Pharmaceutical Science, College of Pharmacy
November 30, 2015
Page 2 of 2

will result in additional disciplinary action up to and including termination for cause. Any specific challenges you have to this action, or your non-reappointment, may be grieved under USF Regulation 10.113, *Faculty Grievances*. You may access all USF Regulations here:

http://regulationspolicies.usf.edu/regulations-and-policies/regulations-policies-procedures.asp

Sincerely,

Charles J. Lockwood, MD, MHCM
Senior Vice President, Health Sciences
Dean, Morsani College of Medicine
Professor, Obstetrics & Gynecology and Public Health
University of South Florida



January 8, 2016

Shu-Feng Zhou, PhD
Professor
College of Pharmacy
16410 Burniston Drive
Tampa, Florida 33647

Re: Non-reappointment date and Assignments

Dear Dr. Zhou:

On November 16, 2015, you received a notice of non-reappointment from your position as a Professor with the University of South Florida, College of Pharmacy (the "University"). After my subsequent review of the Regulation cited in that notice, I have decided to interpret a potential ambiguity in the application of the Regulation in the light most favorable to you. Specifically, the length of notice provided under the Regulation will be extended to equal one year, including the original notice so that your last day of employment will be November 16, 2016. This extension is an administrative clarification made solely at the discretion of management and should not be interpreted in any other way or for any other purpose. I am hopeful that this additional time will allow for a smooth transition. All other matters outlined in the November 16, 2015 letter remain in place, unless otherwise modified in this letter.

Further, by letter dated November 23, 2015, Dean Sneed and Dr. Curran outlined your new work assignment for the duration of your non-reappointment period. I am refining this work assignment and, for each of the researchers included on the attached list, you are to provide a specific written description of each individual's activities while they were on-site here at the University together with a specific written description of what benefit the College of Pharmacy and/or the University received from their efforts during their visit. I expect a high degree of specificity for your report on each individual researcher. In addition, I am establishing the following deadlines for you to complete this assignment:

| | |
|---|---|
| Monday, February 8, 2016 | Names found on lines 2 through 14 |
| Monday, March 7, 2016 | Names found on lines 15 through 27 |
| Monday, April 4, 2016 | Names found on lines 28 through 40 |
| Monday, May 2, 2016 | Names found on lines 41 through 53 |
| Monday, June 6, 2016 | Names found on lines 54 through 65 |

Please provide your original reports to Dean Sneed and, as a courtesy, a copy to my office as each part of the assignment is completed.

VICE PRESIDENT, USF HEALTH • DEAN, MORSANI COLLEGE OF MEDICINE
University of South Florida • 12901 Bruce B. Downs Blvd. MDC02 • Tampa, FL 33612-4742
(813) 974-2196 • Fax (813) 974-3886 • www.health.usf.edu

Shu-Feng Zhou, PhD
January 8, 2016
Page 2 of 2

Finally, the November 23, 2015 work assignment letter also informed you that you may not return to your University office or attend to any other work meetings or functions absent a specific request to do so from Dean Sneed. As a result, you no longer are performing your administrative appointments as Chair of the Department of Pharmaceutical Science and Associate Dean for International Research. Effective as of the date of this letter, your duties and responsibilities associated with these appointments will end. In addition, the $10,000 stipend for the Associate Dean duties and the $15,000 stipend for the Chair administrative duties will be removed from your salary. This action is taken in accordance with University Regulation 10.106(2)(b).

As of today, you may no longer include either of these administrative positions within your title, although you may continue to identify yourself with your professorial rank. With the removal of the administrative titles and duties and the removal of the stipends associated with those duties you will see a corresponding adjustment to your paycheck.

The other terms and conditions of your employment remain in effect during the duration of your employment with the University and the College of Pharmacy and you are expected to adhere to all University Regulations, Policies and Procedures. As I anticipate that you will be engaged in a job search in the upcoming months, I expect that you will take annual leave for any personal activities in order to comply with the University's Regulations regarding the use of leave for such personal events.

Sincerely,

Charles J. Lockwood, MD, MHCM
Senior Vice President USF Health
Dean, USF Morsani College of Medicine

Enclosure

cc:   Dr. Kevin Sneed, Dean, College of Pharmacy
      Faculty Affairs
      Gerard Solis, General Counsel
      Robert Pelaia, Deputy General Counsel

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 1 | | | | | |
| 2 | Pan, Shuting | 3/1/2014 | 6/15/2015 | SF Zhou | Nanchang University |
| 3 | Li, Qing | 11/17/2014 | 11/17/2015 | SF Zhou | Daping Hospital, Third Military Medical University |
| 4 | Ren, Tao | 11/17/2014 | 11/17/2015 | SF Zhou / Zhang G (Moffit) | Daping Hospital, Third Military Medical University |
| 5 | He, Sijia | 11/17/2014 | 11/17/2015 | SF Zhou | Guiyang Medical University |
| 6 | Liu, Zheng | 12/1/2014 | 12/5/2015 | SF Zhou / Cao C | Ningxia Medical University General Hospital |
| 7 | Shang, Yuanyuan | 12/1/2014 | 12/5/2015 | SF Zhou / J Sun | Ningxia Medical University General Hospital |
| 8 | Wang, Xinyu | 12/1/2014 | 12/5/2015 | SF Zhou/Stephanie Zhou | Ningxia Medical University General Hospital |
| 9 | Yao, Ming | 12/1/2014 | 11/30/2015 | SF Shou | Ningxia Medical University General Hospital |
| 10 | Zhang, Jingwen | 12/1/2014 | 11/30/2015 | C Cao/Y Pathak | Dalian Medical University (PhD Candidate) |
| 11 | Wu, Jianfeng | 5/1/2015 | 11/10/2015 | SF Zhou | Foshan University |
| 12 | Zhang, Xuehong | 12/3/2014 | 12/2/2015 | SF Zhou | Ningxia Medical University General Hospital |
| 13 | Zi, Dan | 5/28/2014 | 12/1/2015 | SF Zhou/Germone (COM) | Guiyang Medical University |
| 14 | Peng, Xingsheng | 12/14/2014 | 12/14/2015 | SF Zhou/S Ma (Chemistry) | Guangdong Medical College |
| 15 | Xu, Weiping | 1/15/2015 | 4/15/2015 | SF Zhou/E Haura (Moffit) | Guangdong Provincial People's Hospital |
| 16 | Hong, Yuzhu | 3/30/2015 | 3/29/2017 | SF Zhou/Cao C | Fujiang Traditional Chinese Medicine University |
| 17 | Lu, Yin | 9/15/2014 | 9/14/2015 | SF Zhou/F. Cheng | Drug Discovery & Design Cntr, Shanghai, China |
| 18 | Elkateb, Heba | | | SF Zhou | Mansoura University, Egypt |
| 19 | Narayan, Malathi | 4/2/2013 | 6/30/2015 | Dr. Jinwal | Postdoc |
| 20 | Kazuyuki, Yamazaki | 8/1/2015 | 10/1/2015 | Dr. Pathak/SF Zhou | Toyota Technological Institute, Japan |
| 21 | Zhang, Yongli | 12/1/2015 | 12/1/2016 | Zhou | Tianjin Huanhu Hospital |
| 22 | Zhu, Qiaohua | 5/5/2014 | 5/5/2015 | Zhou | Southern Medical University, Guangdong, China |
| 23 | Zhang, Lifang | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital |
| 24 | Zeng, Aihua | 1/5/2015 | 12/31/2015 | Zhou & Path/Cell Biology Dept | Guangdong Pharmaceutical Unviersity |
| 25 | Zhang, Yi | 3/3/2014 | 9/1/2015 | | |
| 26 | Yuan, Chunxiu | 7/31/2013 | 7/31/2014 | Zhou | Ningxia Medical University General Hospital |
| 27 | Yu, Yang | 3/12/2014 | 3/1/2015 | Zhou | Guangzhou University of Chinese Medicine |
| 28 | Wang, Yanyang | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital |
| 29 | Wang, Qinggao | 7/31/2013 | 7/31/2014 | Zhou | Guangxi University of Chinese Medicine |
| 30 | Tang, Dongsheng | 8/1/2014 | 2/28/2015 | Zhou / Prof. Jin Q. Chen (Moffit | Foshan University |
| 31 | Wang, Feng | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital |
| 32 | Wang, Jiayou | 3/6/2013 | 9/30/2014 | Zhou | Guangxi University of Chinese Medicine |
| 33 | Ren, Baojun | 5/19/2014 | 5/5/2014 | hou | Southern Medical University, Guangdong, China |

| | A | B | C | D | E |
|---|---|---|---|---|---|
| 34 | Shu, Liping | 5/5/2014 | 5/5/2015 | Zhou | Guiyang Medical University |
| 35 | Sun, Pinghua | 3/25/2013 | 3/25/2014 | Zhou/ Moffitt postdoc | Jinan University |
| 36 | Sun, Bo | 7/1/2014 | 6/30/2015 | Zhou | First Peoples Hospital/China |
| 37 | Mo, Suilin | 11/15/2013 | 11/29/2013 | Zhou | Yatsen University, Guangzhou, China |
| 38 | Niu, Niukui | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital |
| 39 | Li, Yancong | 10/1/2012 | 10/3/2013 | Zhou | Southern Medical University, Guangdong, China |
| 40 | Liu, Hui | 12/17/2012 | 12/14/2013 | Zhou | Hunan Normal University |
| 41 | Li, Jinping | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital |
| 42 | Lin, Dong | 11/30/2012 | 11/30/2013 | Zhou | Guangzhou University of Chinese Medicine |
| 43 | Li, Ming | 5/15/2013 | 5/31/2014 | Zhou | |
| 44 | Hu, Zeping | 10/1/2012 | 10/1/2015 | Zhou | |
| 45 | Li, Hai | 10/7/2013 | 4/19/2014 | Zhou | Ningxia Medical University General Hospital |
| 46 | Cheng, Jiang | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital |
| 47 | Chu, Li | 8/22/2013 | 11/22/2013 | Zhou/Cao | Tongji University |
| 48 | Ding, Yonghui | 9/3/2013 | 9/1/2014 | Zhou | Ningxia Medical University General Hospital |
| 49 | Yonh, Du | 10/7/2013 | 11/7/2013 | Zhou | Ningxia Medical University General Hospital |
| 50 | Xue, Wei | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital |
| 51 | Shi, Aixin | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital |
| 52 | Zhao, Ming | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital |
| 53 | Zhang, Yatong | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital |
| 54 | Yang, Liping | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital |
| 55 | He, Jiajie | 7/15/2013 | 10/15/2013 | Zhou | Ningxia Medical University |
| 56 | Zhou, Zhiwei | 4/1/2013 | still here | Zhou | |
| 57 | Yin, Juanjuan | 3/6/2013 | 8/7/2015 | Zhou | |
| 58 | Jin, Hua | 9/1/2011 | 1/10/2012 | Zhou | Zhou's lab |
| 59 | Li, Yuanyuan | | 8/1/2013 | Zhou | volunteer |
| 60 | Zhang, Lu | 12/1/2013 | 12/1/2015 | Zhou | OPS Asst. |
| 61 | Li, Guilong | | | Zhou | Postdoc |
| 62 | Zhou, Yanfang | | | | |
| 63 | Kakoti, Bibhuti | | | | |
| 64 | Li, Jin | | | | |
| 65 | Xie, Liming | | | | |



January 14, 2016

Shu-Feng Zhou, PhD
Professor
College of Pharmacy
16410 Burniston Drive
Tampa, Florida 33647

   Re: Step 1 Response

Dear Dr. Zhou:

On November 16, 2015, you received a notice of non-reappointment from your position as a Professor with the University of South Florida, College of Pharmacy (the "University"). You thereafter delivered a letter dated November 18, 2015 (Grievance) to Dr. Lockwood protesting the decision to deliver the November 16, 2015 notice to you. The University determined that this letter would constitute a grievance filed under USF Regulation 10.113 and you were notified of this by email dated November 19, 2015. (See copy enclosed).

The University received communication from your then-retained counsel advising USF of their representation and indicating an intent to be present at the Step 1 meeting scheduled for December 3, 2015. Prior to that meeting, your attorney notified me that you and she would not be attending the Step1 meeting and that the University's decision should be based on materials already available to USF. See emails dated December 2, 2015 enclosed.

Your attorney then communicated with attorneys for the University concerning your interest in reaching a mutually agreeable settlement of all potential issues. These communications went on for several weeks, until your attorney notified the University that she no longer represented you. The University did not receive a signed copy of the Settlement Agreement prior to reopening for business on January 4, 2016. As a result, I communicated with you about the status of the Grievance and notified you of the University's intent to issue the Step 1 response required by the University's Regulation as there was no settlement. (See emails of January 4 and January 5, 2016 enclosed).

Based on that direction from your counsel on December 2, 2015 and subsequent events, this Step 1 decision is being issued to you in response to your letter of November 18, 2015.

Shu-Feng Zhou, PhD
January 14, 2016
Page 2 of 3

University Regulation 10.110 permits the University to issue letters or notices of non-reappointment to non-tenured[1] faculty. As your appointment is non-tenure earning, the issuance of the November 16, 2016 letter notifying you that your appointment is to end is clearly within the University's authority. You have the corresponding right to challenge the decision under USF Regulation 10.113 and you have done so, but as the decision to non-reappoint is considered to be a non-disciplinary matter, the obligation to show that the decision reached by the University is in error rests solely with you, as the Grievant.

In reviewing the Grievance, you have not stated any facts or reasons why a term or condition of your employment was unjust, how Regulation 10.110 was wrongfully applied to you, or that it was applied in a manner that violates a University Regulation, Policy or Procedure. Without any such information from you, the Grievance is unsupported and therefore denied. Your last day of employment will be consistent with written communications you received from Dr. Lockwood.

There are two other matters which you have raised in your Grievance that are outside the authority of USF Health to review and which may not be reviewed as part of the grievance process pursuant to USF Regulation 10.113(1)(d). First, you specifically believe that the non-reappointment action taken by the University is due to you being Chinese and/or your April 2015 complaint filed with the Office Diversity, Inclusion and Equal Opportunity (DIEO).[2] Faculty Affairs will refer this portion of the concerns outlined in your Grievance to DIEO for further consideration.

Second, you provided an email that describes alleged activity that occurred in China while you and others were travelling for University purposes, some of which were raised in your DIEO complaint and have thus already been reviewed. These assertions will be reviewed by the University to the best of its abilities, but are not relevant to the non-reappointment.

Based on the foregoing, the Grievance is denied. As Faculty Affairs serves as the designee of the Senior Vice President for USF Health on grievance matters, this Step 1 response ends all processing of the Grievance as it is a non-disciplinary matter which may be grieved only to the Senior Vice President, USF Health in accordance with USF Regulation 10.113(1)(b). The file on the Grievance will now be closed (USF Regulation 10.113: http://regulationspolicies.usf.edu/regulations/pdfs/regulation-usf10.113.pdf)

Issued on behalf of
Charles J. Lockwood, MD, MHCM
Senior Vice President USF Health
Dean, USF Morsani College of Medicine

---

[1] The University is authorized to issue such letters to non-tenure earning or tenure-earning (but not yet tenured members of the faculty).
[2] That matter was reviewed by DIEO. A Final Investigative Report found no basis to believe the allegations were factually based and the matter was dismissed by DIEO.

Shu-Feng Zhou, PhD
January 14, 2016
Page 3 of 3

Olga J. Joanow, JD, SPHR
Director, Faculty Relations
USF Health

Enclosures

cc:    Dr. Charles J. Lockwood, MD, MHCM, Senior Vice President USF Health
          Dean, USF Morsani College of Medicine
      Dr. Kevin Sneed, PharmD, Dean, College of Pharmacy
      Dr. Valerie M. Parisi, MD, MPH, MBA
          Senior Associate Vice President of Academic Affairs, USF Health
          Vice Dean of Faculty Affairs, Morsani College of Medicine
      Dr. John S. Curran, MD
          Associate Vice President of Faculty & Academic Affairs, USF Health
          Senior Executive Associate Dean for Faculty & Academic Affairs, Morsani
          College of Medicine,
      Gerard Solis, General Counsel
      Robert Pelaia, Deputy General Counsel

## Joanow, Olga

| | |
|---|---|
| **From:** | Joanow, Olga |
| **Sent:** | Thursday, November 19, 2015 11:03 AM |
| **To:** | Zhou, Shufeng |
| **Cc:** | Sneed, Kevin; Curran, John; Parisi, Valerie |
| **Subject:** | Grievance |
| **Importance:** | High |

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | Zhou, Shufeng | Read: 11/19/2015 11:05 AM |
| | Sneed, Kevin | Read: 11/19/2015 12:10 PM |
| | Curran, John | |
| | Parisi, Valerie | |

Dr. Zhou,

Your letter dated November 18, 2015 was delivered to Dr. Lockwood's office yesterday afternoon.

In reviewing the letter on his behalf, under the University's Regulation 10.113, this November 18, 2015 letter will be treated as your grievance filing. Here is the link to the Faculty Grievance Regulation http://regulationspolicies.usf.edu/regulations/pdfs/regulation-usf10.113.pdf, additionally I provided you a hard copy on Tuesday, November 17, 2015 when you and I met. We are now in the Informal Resolution period as outlined in paragraph 10.113(4) of the Regulation, and the University is obligated to engage in this process during at least the next 30 days.

However, if you so choose, under Regulation 10.113(6), you may request in writing that we go directly to a Step 1 meeting on your grievance. If you elect to go directly to Step 1, you are welcome to notify me by return email.

Also, when we met on Tuesday, you mentioned that you had a legal team or representative. If you will be represented by an attorney during your grievance, please let me know so that I can pass that information on to the University's attorneys.

Finally, I ask that you provide me with a cell phone number and personal email address as an alternate means of communicating with you.

Olga

*Olga J. Joanow, JD, SPHR*
Director, Faculty Relations
USF Health
12901 Bruce B. Downs Blvd.
MDC 53
Tampa, Florida 33612-4799
813.974.1676  voice
813.974.7527  fax

## Joanow, Olga

**From:**      Joanow, Olga
**Sent:**       Wednesday, December 02, 2015 5:07 PM
**To:**         'Janet Wise'
**Cc:**         Solis, Gerard D.
**Subject:**    RE: Scheduling Step 1 Meeting (Zhou / USF)

| **Tracking:** | **Recipient** | **Read** |
|---|---|---|
| | 'Janet Wise' | |
| | Solis, Gerard D. | |
| | Curran, John | Read: 12/2/2015 9:35 PM |
| | 'Pelaia, Robert' | |
| | Parisi, Valerie | Read: 12/2/2015 5:22 PM |

Janet,

Thank you for letting me know of your intention with respect to the Step 1 meeting. As you have requested, the Step 1 meeting is cancelled.

I will, of course, consider the University's records and the materials he has already provided to the University. Since there is an opportunity to provide additional materials during a Step 1 meeting, should you discern that there are other items you would like the University to consider I ask that you provide them to me no later than 5:00 Monday, December 7, 2015.

If you have any questions about the grievance process in the interim, please feel free to contact me at your earliest convenience.

Olga


-----Original Message-----
From: Janet Wise [mailto:jwise@sasslawfirm.com]
Sent: Wednesday, December 02, 2015 3:40 PM
To: Joanow, Olga
Cc: Solis, Gerard D.
Subject: RE: Scheduling Step 1 Meeting (Zhou / USF)

Dear Olga:

Thank you for your email. Upon Dr. Zhou's retaining our law firm to represent him, I have now had a chance to review the file. Because we do not have additional information or materials to present for your consideration beyond that to which you already have access, Dr. Zhou and I do not plan to attend the Step 1 grievance meeting tomorrow. My understanding of the process is that you will undertake a review of the information and materials and issue a written decision. If Dr. Zhou or I are required to appear in person for some reason even though we do not intend to present additional information or materials, please let me know immediately. Otherwise, we will look forward to receiving your written decision within 30 days. Thank you.

Sincerely,
Janet

1

Janet E. Wise
Law Offices of Cynthia N. Sass, P.A.
601 W. Dr. Martin Luther King Jr. Blvd.
Tampa, FL 33603
(813) 251-5599 - phone
(813) 259-9797 - fax
www.EmploymentLawTampa.com

Please note: The information contained in this e-mail may be confidential and privileged and is intended only for the individual or entity to which it is addressed. If you are not the intended recipient, any use, dissemination or copy of this communication is strictly prohibited. If you received this communication in error, please notify us immediately at the address or telephone number listed.

-----Original Message-----
From: Joanow, Olga [mailto:ojoanow@health.usf.edu]
Sent: Wednesday, December 2, 2015 11:55 AM
To: Zhou Shufeng; Nichols, Pamela; Solis, Gerard D.
Cc: Janet Wise
Subject: RE: Scheduling Step 1 Meeting (Zhou / USF)

Yes, tomorrow at 11:00 works for Faculty Affairs. We will meet in the conference room in our office suite.

Gerard or Robert will be joining us.

Olga

-----Original Message-----
From: Zhou Shufeng [mailto:shufengzhou2006@hotmail.com]
Sent: Wednesday, December 02, 2015 11:16 AM
To: Joanow, Olga; Nichols, Pamela; Solis, Gerard D.
Cc: jwise@sasslawfirm.com
Subject: ??: Scheduling Step 1 Meeting (Zhou / USF)

Dear Olga, can we meet at 11 am tomorrow? My attorney Janet Wise will attend. Regards. Shufeng Zhou

2

## Joanow, Olga

| | |
|---|---|
| **From:** | Zhou Shufeng <shufengzhou2006@hotmail.com> |
| **Sent:** | Tuesday, January 05, 2016 7:00 PM |
| **To:** | Joanow, Olga |
| **Cc:** | Pelaia, Robert; Curran, John; Parisi, Valerie |
| **Subject:** | 答复: Step 1 response |

Dear Olga Joanow,

Thanks for your attention and happy New Year! I wonder if you have received the letter from my attorney Mr Yang Wen in China to our President Genshaft.

I am retaining my new attorney.

Regards.

Shufeng Zhou

---

发件人: Joanow, Olga <ojoanow@health.usf.edu>
发送时间: 2016 年 1 月 4 日 18:35
收件人: Zhou Shufeng
抄送: Pelaia, Robert; Curran, John; Parisi, Valerie
主题: Step 1 response

Dr. Zhou,

It is my understanding that you have not signed the settlement agreement. The grievance process was essentially suspended during the time discussions of the settlement agreement were occurring. With the end of settlement discussions between you and the University, I will now to move forward to prepare the Step 1 response based on the materials available to USF.

Due to the University's Winter Break, all University business offices were closed for approximately eleven (11) days, so while I would ordinarily issue the Step 1 response thirty (30) days after the scheduled Step 1 meeting (December 3, 2015, in this case), the time to issue that response will be extended by that amount of time of the Winter Break. I will issue a response on your Grievance next week.

If you have any questions, please feel free to communicate with me by email or phone at your convenience.

Olga

*Olga J. Joanow, JD, SPHR*
Director, Faculty Relations
USF Health
12901 Bruce B. Downs Blvd.
MDC 53
Tampa, Florida 33612-4799
813.974.1676 voice
813.974.7527 fax

1

January 11, 2016

Professor Charles (Charly) J. Lockwood, MD, MHCM
Senior Vice President, USF Health
Dean, USF Health Morsani College of Medicine, USF
12901 Bruce B. Downs Blvd.,
MDC02
Tampa, FL33612

Re: **My conflicts with Dr Kevin Sneed, Dean of College of Pharmacy, USF Health.**

Dear Professor Lockwood,

Thanks for your letter dated January 8, 2016.

I have joined College of Pharmacy (COP) of USF Health from Australia since August 2010 with
only one main mission — to help Dr Sneed set up the PharmD program at USF Health with
incorporation of a good research component. Now this mission has been achieved and I
thought it was time for me to help Dr Sneed consolidate, improve, and strengthen our PharmD
program.

However, I have lost everything here at USF: job, reputation, recognition, friendship, etc, since
November 16, 2015 when you signed the HR letter to me. Although I keep trying hard, I cannot
find a job from anywhere because: a) my USF office email (szhou@health.usf.edu) has been
hijacked by someone illegally; b) I cannot be contacted via my office phone; and c) I cannot find
anyone from USF Health who is willing to write a recommendation letter for my job hunting. All
potential employers from the US and other countries can easily know my bad situations and
troubles at College of Pharmacy, USF Health. To save myself, I have to keep complaining to key
people, government agencies, etc. But in fact, I am a professor and scientist, not a fighter and
troublemaker. My American dream has totally broken up.

To proceed to resolve my conflicts with Dr Kevin Sneed, Dean of College of Pharmacy, USF
Health, I propose that:

1. Immediately reinstate my positions including Chair of Department of Pharmaceutical
   Sciences and Associate Dean for International Research, responsibilities, and rights at
   College of Pharmacy, USF Health, as those before December 31, 2014. Since 2015, Dr
   Sneed has started encircling, suppressing, discriminating, and retaliating me. My tenure
   application submitted to COP USF Health in June 2015 should be fairly and properly
   reviewed and considered.
2. You and Dr Sneed should ensure that none from USF will suppress, disparage,
   discriminate, and retaliate me when I work at College of Pharmacy, USF Health.
3. The College of Pharmacy, USF Health, should pay me $500,000.00 as compensation for
   the extreme stress and pains I have suffered since November 16, 2015.

1

4. In return, I will immediately withdraw all my complaints about Dr Sneed, you, and Dr Deschenes to our President Genshaft, Governor Scott, federal senates and representatives, American Pharmacy Education Council (ACPE), FCHR, EEOC, etc, and I will not sue anyone from USF.

5. The College of Pharmacy, USF Health, should pay the legal charges from my attorneys (so far <$20,000).

Best regards.

Professor Shufeng Zhou, MD & PhD,
College of Pharmacy, USF Health, Tampa, FL33612.
Email: shufengzhou2006@hotmail.com
Phone: 813 505 1507 (Mobile); 813 405 4718 (Home).

Cc:

Dr Judy Genshaft, PhD, President
University of South Florida (USF) System
Office of the President
4202 E Fowler Ave,
Tampa, FL 33620.

Mr Gerard Solis, JD, & Mr Robert Pelaia, JD,
Senior Deputy General Counsels,
Office of the General Counsel,
University of South Florida,
4202 E. Fowler Avenue, CGS 301
Tampa, FL 33620.

Representing Management Exclusively in Workplace Law and Related Litigation

**jackson lewis**

Attorneys at Law

Jackson Lewis P.C.
100 South Ashley Drive
Suite 2200
Tampa, Florida 33602
Tel 813 512-3210
Fax 813 512-3211
www.jacksonlewis.com

| | | | |
|---|---|---|---|
| ALBANY, NY | GRAND RAPIDS, MI | NAPA, CA | RALEIGH-DURHAM, NC |
| ALBUQUERQUE, NM | GREENVILLE, SC | NEW ORLEANS, LA | RAPID CITY, SD |
| ATLANTA, GA | HARTFORD, CT | NEW YORK, NY | RICHMOND, VA |
| AUSTIN, TX | HOUSTON, TX | NORFOLK, VA | SACRAMENTO, CA |
| BALTIMORE, MD | INDIANAPOLIS, IN | OMAHA, NE | SAINT LOUIS, MO |
| BIRMINGHAM, AL | JACKSONVILLE, FL | ORANGE COUNTY, CA | SAN DIEGO, CA |
| BOSTON, MA | LAS VEGAS, NV | ORLANDO, FL | SAN FRANCISCO, CA |
| CHICAGO, IL | LONG ISLAND, NY | OVERLAND PARK, KS | SAN JUAN, PR |
| CINCINNATI, OH | LOS ANGELES, CA | PHILADELPHIA, PA | SEATTLE, WA |
| CLEVELAND, OH | MEMPHIS, TN | PHOENIX, AZ | STAMFORD, CT |
| DALLAS, TX | MIAMI, FL | PITTSBURGH, PA | TAMPA, FL |
| DAYTON, OH | MILWAUKEE, WI | PORTLAND, OR | WASHINGTON, DC REGION |
| DENVER, CO | MINNEAPOLIS, MN | PORTSMOUTH, NH | WHITE PLAINS, NY |
| DETROIT, MI | MORRISTOWN, NJ | PROVIDENCE, RI | |

DIRECT DIAL: 813-512-3225
EMAIL ADDRESS: LAURA.PRATHER@JACKSONLEWIS.COM

January 15, 2016

Shu-Feng Zhou, PhD
16410 Burniston Dr.
Tampa, FL 33647

Re: Malicious and Defamatory Statements

Dear Dr. Zhou:

We have been retained by Kevin B. Sneed, PharmD to take legal action against you for your actions maligning his character. Dr. Sneed is a Senior Associate Vice-President for USF Health and Dean of the College of Pharmacy at the University of South Florida.

We have been made aware of your libelous communications sent to individuals associated with the University of South Florida as well as political figures. The timing of your actions is indicative of your true motive. Following your November 16, 2015 notice of non-reappointment, you began a course of action allegedly designed to coerce the University of South Florida and/or Dr. Sneed to reconsider your non-reappointment. Specifically, you published malicious and threatening allegations about Dr. Sneed that presumably occurred more than four years prior to your notice of non-reappointment.

You have accused Dr. Sneed of alleged activity that occurred in China while you and other professionals from the University of South Florida traveled for University business. Your emails, letters and verbal communications including these claims rise to the level of defamation per se. In such cases, courts can award damages for economic loss as well as to punish egregious actions when warranted. Dr. Sneed adamantly denies the conduct that you claim occurred in March of 2011, but even if true, your continued publication of these events is malicious and will be dealt with accordingly.

This letter also serves as formal notice of your ongoing and legal duty to preserve any and all information relevant to this matter including 1) business records; 2) paper, digital, or electronic files; 3) data generated by and/or stored on computers and storage media; and 4) electronic data such as: voicemails, text messages, e-mails, digital/analog audio recordings; 5) any related physical evidence; and 6) any form of video recordings. Violations of the legal duty described in this notice can result in severe sanctions being imposed by the Court for spoliation of actual evidence or potential evidence.



Attorneys at Law

Shu-Feng Zhou
January 15, 2016
Page 2

Dr. Zhou, we are hopeful that you will cease and desist your defamatory activity so that no additional action will be necessary.   If we are made aware that you continue to send defamatory communications, we will have no alternative but to seek resolution in the judicial system.

JACKSON LEWIS P.C.

Laura E. Prather, B.C.S.

LEP/nv

4828-2761-2460, v. 1



February 18, 2016

Shu-Feng Zhou, PhD
Professor
College of Pharmacy
16410 Burniston Drive
Tampa, Florida 33647

Re:    Notice of Intent to Terminate Employment for Cause

Dear Dr. Zhou:

This letter is a Notice of Intent to Terminate Employment for Cause from your position as a Professor in the College of Pharmacy (College) and all joint appointments in any other Colleges within the University of South Florida (USF or University). This proposed action is based on misconduct or incompetence in accordance with USF Regulation 10.112(1)(b). See **Attachment 1**. Therefore, this action, if taken, would be with just cause under USF Regulations. The final paragraph of this letter details your right to respond to this letter prior to your termination for cause becoming final.

As is discussed in more detail below, after you were first provided an opportunity to retrieve personal items from your office, USF Health conducted a review of the materials left in your University issued office; on your university issued computer; and USF Health email account. This review was conducted to ensure continuity of operations during the remaining period of your off-campus professional development leave and employment with the University. In the process, a number of records surfaced that appear to indicate a high level of outside activities, which were not disclosed and that appear to present clear conflicts of interest. This is a significant issue because USF employees are supported by public funds and so, in turn, must support the public trust. This includes upholding the University's ethical and conduct standards in regard to outside activities and conflicts of interest. You appear to have failed to conduct yourself in accordance with applicable University standards by engaging in a number of outside activities, including several that were compensated, without making the required prior disclosure or obtaining the required approvals. You also appear to have used your position and other university resources for your personal gain.

An aggravating factor in this matter is that several of the activities occurred at the same time or after you had received training on outside activity reporting and conflicts of interest. Also contributing to this University action is your prior Written Reprimand issued on November 30, 2016. Insofar as that Written Reprimand was issued for poor judgment, your conduct here represents an extension of same.

Based on these apparent knowing violations and prior discipline, termination of your employment at the University for misconduct or incompetence is appropriate. The reasons for this action are presented below in detail.

VICE PRESIDENT, USF HEALTH  •  DEAN, MORSANI COLLEGE OF MEDICINE
University of South Florida  •  12901 Bruce B. Downs Blvd. MDC02  •  Tampa, FL  33612-4742
(813) 974-2196  •  Fax (813) 974-3886  •  www.health.usf.edu

Shu-Feng Zhou, PhD
February 18, 2016
Page 2 of 7

## BACKGROUND INFORMATION

Employees of universities within the State University System are considered to be public employees in Florida. Various State Laws, and University Regulations and Policies, govern your conduct as an employee of the University of South Florida. It is under the authority of Florida law that the University enacts its own Regulations and Policies.

USF Regulation 10.107 states that University employees "are required to observe, in all official acts, the highest standards of ethics and conduct consistent" with the State of Florida law for public employees. USF Policy 0-027 sets out more detailed guidance on the professional obligations of a member of the University's faculty with respect to Conflicts of Interest, Conflicts of Commitment and Outside Employment. See Regulation and Policy, **Attachments 2a and 2b**, respectively.

USF Policy 0-027, II.F.4.a. defines Outside Activity as

any employment, private practice, private consulting, teaching, research, service on boards or commissions, or any other activity, compensated or uncompensated, which is not part of the employee's assigned duties and for which the USF System does not provide compensation.

USF Policy 0-027, II.F.4.b Conflict of Interest or Commitment is defined as

any unresolved conflict between the private interests of the employee and the public interests of the USF System, including conflicts of interest specified under Florida Statutes; or any activity which interferes with the full performance of the employee's professional or institutional responsibilities or obligations

USF Policy 0-027, II.F.5.a. requires that an employee who intends to "engage in outside activity must disclose and receive prior approval" when "the activity involves more than incidental use of USF System facilities, equipment or services; or...the activity is one that the employee should reasonably conclude may create a conflict of interest or commitment" whether the activity is compensated or not. Section II.F.5.b goes on to state that a member of the "Faculty (9 & 12 month) who propose to engage in any professional, compensated outside activity must disclose and receive prior approval for such outside activity." (Emphasis added)

To facilitate the needs of faculty in reporting their Outside Activity, in 2007, USF Health created the web-based ROAD system. In 2014, USF Policy 0-027, II.F.5.d. codified the imparted requirement that had existed from the inception of ROAD that USF Health Faculty report their Outside Activity in the ROAD system.

In your role as the former Chair of the Department of Pharmaceutical Science (Department), College of Pharmacy, you had discussions about the ROAD system with administrative officials at USF Health in order to provide information to the faculty in that Department. Also, at your request, Faculty Affairs made a presentation on the ROAD system, the obligations set out in University regulations to report on these activities, and the

Shu-Feng Zhou, PhD
February 18, 2016
Page 3 of 7

potential for conflicts of interest with University employment at a Department Faculty
meeting at which you were present; thus, you had knowledge of the requirement and
processes for reporting Outside Activities and University requirements relative to conflict of
interest.

## A. <u>CONFLICT OF INTEREST/CONFLICT OF COMMITMENT/OUTSIDE EMPLOYMENT</u>

Based on a comparison of  items reported by you in ROAD during your arrival at the
University (See ROAD Activity Report, **Attachment 3**) and information publicly available or
located in your University office (see next section for additional discussion), the following
specific Outside Activities (both compensated and uncompensated) were never reported to
the University:

- Dove Medical Press
- DRJ Publishing, Inc.
- Consulting
- External Review of Research Applications

1. <u>Dove Medical Press</u>:  You held a position as an Editor with Dove Medical Press
(Dove) that appears to have lasted at least through the summer/early fall of 2015. See
**Attachment 4**. The fact that your relationship with Dove may have existed prior to joining
the University does not eliminate the obligation of a faculty member to disclosure such a
relationship. This Outside Activity was not disclosed as required by USF Policy 0-027. See
**Attachments 2.b and 3**.

Significantly, University financial records show the College paid approximately
$46,000 to Dove to publish scientific articles on which you were listed as an author at the
same time you were both an Editor with Dove and employed at the University. Your role
with Dove was not disclosed at the time of the payment. The first payment made by the
College occurred in September 2014, with additional payments occurring in 2015. See
**Attachment 5**. March 2015 bank records show that you received an honorarium from Dove
(see **Attachment 4**) during the time the College was making payments to Dove for articles
on which you are listed as an author. The fact that you directed or authorized payments of
any amount from the College to a business entity with which you had an official or
contractual relationship to serve as an Editor would constitute a violation of USF Policy 0-
207 II.C.2. which states:

> No employee of the USF System shall have or hold any employment or <u>contractual</u>
> <u>relationship with any business entity that is doing business with the USF System and</u>
> <u>shall not, while acting in a private capacity</u>, rent, lease, or <u>sell any</u> realty, <u>goods, or</u>
> <u>services to the USF System</u>, unless the contract to rent, lease, or sell was entered
> into prior to the employee beginning employment in the USF System; unless an
> exemption contained in Florida Statutes §112.313 (12) applies.[1] (Emphasis added)

2. <u>DRJ Publishing, Inc.</u>: Records publicly available from the State of Florida show
that you incorporated DRJ Publishing, Inc. (DRJ) in 2012. You never disclosed the

---

[1] None of the exemptions listed in §112.313(12), Fla. Stat. apply to this situation.

Shu-Feng Zhou, PhD
February 18, 2016
Page 4 of 7

existence of this Florida for-profit corporation and the positions you hold with it (you are
listed as the President and Registered Agent according to the Florida on-line corporate
record information) in ROAD. DRJ Publishing is shown by the State as having active status
with the State of Florida (as of February 14, 2016) with the last annual report filed in
January 2015. Our review of these Florida records supports the view that you failed to
identify this Outside Activity in ROAD (see **Attachment 3**) as required by USF Policy 0-027
for over three (3) years. See State of Florida records, **Attachment 6**.

When viewing the websites for a number of journals published by DRJ, they include
your University address as the apparent contact point for the journal, which could create the
impression that the University approves of and houses these journals; in fact, no such
approval was requested or given. (See various journal records, **Attachments 7a, 7b, and
7c**). As a result, it appears that you made use of your position for your personal benefit (i.e.
to create a connection between DRJ and USF). A January 2015 bank statement shows that
DRJ issued a check to you in the amount of $5000. A further personal benefit appears on
the DRJ website via a payment schedule for publishing articles in journals under the DRJ
umbrella[2]. See web pages with fee information and bank information, **Attachments 8a and
8b**.

The extent of this activity is equally troubling since multiple journals are listed on the
DRJ website. Given the amount of time that would necessarily have been devoted to
publishing and editing any one of them, let alone the multiple journals that are listed as part
of DRJ, it would appear that a conflict of interest was unavoidable in this activity. See
**Attachment 9** and **10**.

3. Consulting work with Chinese Hospitals: From the documents reviewed, you
appear to have engaged in consulting arrangements with Chinese hospitals and/or Chinese
corporations that you did not disclose. Such consulting was not part of the faculty duties
assigned to you by the University. Your correspondence appears to demonstrate that you
were engaged in consulting activities (a word used by you in the various communications)
on a personal basis, and that you personally received substantial payments for such
consulting, rather than for the University. See **Attachment 11 a-g**. If you had been
assigned by the University to work with these entities, you would not have been permitted to
retain any compensation for that work since any money paid would have come to the
University directly, or there would have been no payment made by the outside entity.

4. Reviewing research applications for the Food and Health Bureau, Government
Secretariat, Hong Kong Special Administrative Region: You appear to have engaged in and
received compensation from the Chinese government for reviewing research proposals.
See **Attachment 12a and 12b**. This is unreported Outside Activity that would present a
conflict with your primary employment with the University.

In sum, failing to disclose the existence of the above described Outside Activities

---

[2] Although information in Attachments 5a-c does indicate that the base fee of $880 is waived, the fact remains
that there is a base fee and additional charges depending on the type of services which a researcher requires
and is willing to pay for (including apparently actually writing the articles for publication at a cost of $6,800.00—
see Attachment 6a).

Shu-Feng Zhou, PhD
February 18, 2016
Page 5 of 7

would violate Regulation 10.107 and USF Policy 02-027, Sections II.4.b, II.5.a.v, II.5.b, and II.5.d.

## B. MISUSE OF UNIVERSITY PERSONNEL, PROPERTY OR EQUIPMENT

As presented above, you appear to have used your University office and University issued equipment for personal matters at more than incidental levels. The University provided both the office and the computer equipment to enable your assigned work duties and for which the University provided compensation. See, for example **Attachments 8b, 10, 13, 11a-g, and 12a-b**. In addition, it also appears that you had an employee paid by the University working on your behalf to assist you in personal business. For example, you directed a University employee to assist you in the management of your personal rental properties. See **Attachment 13**. This use of University resources and/or employees for your personal gain is a Conflict of Interest in violation of USF Policy 0-027, II.5.a.i.

## C. MISUSE OF YOUR POSITION AT THE UNIVERSITY

1. Funds for Students/Visiting Scholars: You evidently diverted funds to support visiting students/scholars to accounts outside USF that you control. Specifically, banking records show the electronic transfer of funds from China in the amount of $12,000 to support eight (8) students (short-term exchange) in August 2013. These funds were deposited into your personal account (account number ending in 4590). See **Attachment 14**. Additionally, funds from two (2) visiting scholars in the amount of $6000 (transaction date January 5, 2015) were deposited into the DRJ business account (account number ending in 9035) controlled by you, and the amount of $20,000 (transaction date March 20, 2015) was deposited into your personal account (account number ending in 4590). See **Attachments 8b and 4**.

There is no record of receipt of any of these funds by the University. Your acceptance of these funds would result in unauthorized compensation under USF Policy 0-027, II.A.4. and could constitute misappropriation of funds that were due the University to support the visiting scholars.

2. Unauthorized Contracts/Relationships: Based on several documents and drafts of documents, you engaged in efforts to bind USF to contractual obligations with various Chinese hospitals or other entities. Signing these contracts was not within your authority in your position as a Department Chair or Associate Dean. There is no record to demonstrate these contracts were ever presented to or properly reviewed by University counsel and senior leadership of the University with the authority to enter into such agreements. See **Attachments 11b, 11g, and 15**. In addition, these arrangements were not presented to your colleagues and College faculty for an assessment of possible educational value.

3. Money paid by foreign entities to you: As you offered in **Attachments 11c, and 11d,** you were personally paid for "consulting" work by Xioalin People's Hospital, Shunde People's Hospital and Ningxia Medical University General Hospital for your efforts.

Shu-Feng Zhou, PhD
February 18, 2016
Page 6 of 7

$ 6,400.00   deposited 01/22/14
$50,000.00   deposited 01/22/14
$23,985.00   deposited 02/25/14
$29,985.00   deposited 02/25/14

The securing of these payments entailed use of your official position with the University to secure a privilege or benefit for yourself in violation of USF Policy 0-027, II, B.1. and any compensation personally received by you would violate of USF Policy 0-027, II.A.4.

   4. Yunnan Changning Dekang Biotechnology Co., Ltd (Dekang): USF and Dekang entered into a research agreement regarding e-cigarettes which provided for $100,000 in funding (paid into a USF Foundation account) to support the research efforts. You submitted a research proposal document to the USF Division of Sponsored Research in July 2012 and specifically certified to that office that you had no Conflict of Interest or Outside Activity associated with the project. The research was to occur between August 2012 and August 2013.See Attachment 16a. The College reports that you had signatory authority over this account funded by Dekang and that activities to support the research funded by Dekang were part of your assigned faculty research activities.

   Records show that you accepted the following direct payments from Dekang to your personal account (account ending in 4590; See Attachments 11d and 16b):

$ 4,975.00   deposited 11/23/11
$ 9,644.32   deposited 04/24/12
$24,975.00   deposited 12/05/13

You received these amounts before and after the term of the research agreement between USF and Dekang. But, also, you accepted this money from Dekang, during the time documents to support the research gift would have been prepared and/or under consideration by the College of Pharmacy and the USF Division of Sponsored Research. The Research agreement shows you as being the Principal Investigator (PI).  Clearly, during that period of time, your activities contemplated under the USF/Dekang agreement would have been part of your University assignment in your role as the PI. See Attachment 16a.

   Moreover, your personal acceptance of money from Dekang raises issues about the integrity of any research you conducted; allowing the perception that you were independently being compensated to secure a specific research result. This financial arrangement was not disclosed through ROAD or through the University's Office of Research Integrity. As such, receipt of this money would appear to be a Conflict of Interest under 0-027, II.B.1. Such a failure would be a violation of USF Policy 0-309, III.B. See Research Misconduct policy, Attachment 17.

   In sum, the actions listed in this section would constitute violations of USF Policy 0-027, II.A.4, II.B.1, II.F.1, II.F.2, II.F.5.a.v, II.F.5.b, and a violation USF Policy 0-309, III.B for which you can be disciplined under 0-309, VI.

Shu-Feng Zhou, PhD
February 18, 2016
Page 7 of 7

**CONCLUSION**

Based on the facts presented you appear to have repeatedly failed to disclose substantial outside activities and you have personally benefited from those activities, at the expense of the University and ultimately in violation of the public trust.

Therefore, the University issues this Notice of Intent to Terminate Employment for Cause. You have the option to respond in writing to this letter within ten (10) calendar days of issue, which due to weekends must be delivered by no later than 5:00 pm, Monday, February 29, 2016. Your response should be delivered to the Office of Faculty Affairs, CMS 3063. In your response, you may present any information you believe may cause the University to cease or alter this proposed action. Your compensation and benefits remain unchanged pending the University final decision in this matter. Should this proposed action become final, it may be grieved under USF Regulation 10.113 Faculty Grievances.

Please direct questions in regard to this notice to Olga J. Joanow, Director, Faculty Relations, USF Health. You may reach her at 813-974-1676 or ojoanow@health.usf.edu.

Charles J. Lockwood, MD, MHCM
Senior Vice President, USF Health
Dean, USF Health Morsani College of Medicine

cc:    Kevin Sneed, PharmD, Dean, College of Pharmacy
       Faculty Affairs
       Office of the General Counsel

Attachments 1-17

March 4, 2016

Professor Charles J. Lockwood, M.D. & M.H.C.M.,
Senior Vice President, USF Health
Dean, Morsani College of Medicine, USF Health, USF
12901 Bruce B. Downs Blvd., MDC02
Tampa, FL33612.

**Re: My Responses to Notice of Intent to Terminate Employment for Cause dated February 18, 2016**

Dear Professor Lockwood:

Thanks for your letter dated February 18, 2016. In this letter, you have stated that you have searched my office computer and found so-called "evidence" for my misconduct or incompetence and thus you have determined to terminate my employment with USF. Amazingly, I have found that the word **"Termination"** has appeared more than 30 times in your letter and the attached files.

In fact, you do not need a new reason to fire me. There is an old Chinese saying: "If you wish to criminate somebody, you will meet no difficulty in finding a pretext". In your first non-reappointment letter dated November 16, 2015, you maliciously and intentionally gave me only three months for transition although our University Regulation **USF10.110** has clearly indicated that *"One year's notice for all faculty members with two (2) or more years of service, with employment in the summer conditional upon the summer assignments procedures in the relevant department or unit"* (see **Attachment 1**). In your second letter of written reprimand dated November 30, 2016, you have threatened to terminate my employment with USF only because I have lawfully complained to USF president and other authorities about Dr. Kevin Sneed's misconduct and prostitute buying behaviors in 2011 and 2012 when he traveled to China on behalf of USF.

Reading all the letters from you, Dr. John Curran, and Dr. Kevin Sneed and observing what three of you have done against me since November 16, 2016, I can see clear abuse of power, mismanagement, prejudice, discrimination, retaliation, persecution, hate, intimidation, and threat based on my Chinese origin and skin color. You three people treat me as "three-fifth of a person" and nobody although I am the Founding Chair and one of the major contributors for the successful setup and full accreditation of USF Pharmacy program and I am one of the most productive professors with the highest scientific influence at USF based on the data of Thomson Reuters in 2014 and 2015.

To protect and save Dr. Sneed with evidenced misconduct and incompetence, an African American, you and Dr. Curran have conducted very discriminatory actions against me. But I advise both of you, Dr. Sneed has transferred his only real property located at 5041 Devon Park Drive, Tampa, FL33647, to a living trust to avoid potential legal risk and punishment.

When I have major conflicts with Dr. Sneed and officially complained about his misconduct and incompetence, it is against our university regulations and Florida laws to instruct and allow him to investigate on what I have done in the past five and half years at USF. Please be advised that as an employee of USF, a public university, I am protected against unreasonable search and seizure at work by the Fourth Amendment of U.S. Constitution.

Looking at the two major charges against me in your letter dated February 18, 2016, I totally disagree to these charges and all the so-called "evidence" you rely on is far-fetched, untenable, and unverified. Ironically, you have even attached blackmail to support your claims in your letter (see **Page 10 of Attachment 4** of your letter).

I would like to emphasize that:

1. I have been working very diligently for the College of Pharmacy, USF Heath, since I joined USF in August 2010. My total working time per year is more than 4,000 hours. So it is reasonable for me to assign about 500 to 700 hours to run my own incorporation DRJ Publishers Incorporation which was started in December 2011. The remaining 3,300 to 3,500 hours are all committed to my duties for USF when I used to have four titles including Full Professor, Chair of Department of Pharmaceutical Science, Associate Dean for International Research, and Associate Vice President for Global Medical Development.

2. I never get any budget from Dr. Sneed for my key responsibilities as the Associate Dean for International Research of College of Pharmacy, USF Health. In contrast, I have raised more than $100,000 from various sources to support our international collaborations and multiple business travels to China of main USF Heath Leaders and senior faculty (**Attachment 2**). I have fully supported one trip for Dr. Stephen Klasko (Senior Vice President for USF Health until September 2013) to China, one trip for Dr. Jerome Yankowitz to China, two trips for Dr. Robert Deschenes to China, one trip for Dr. John Sinnott to China, and three trips for Dr. Sneed to China.

3. DRJ Publishers Incorporation is registered and started by me with the State of Florida and protected by laws in Florida. Its business operating, consulting service, and running are fully separated from my duties and work assigned by Dr. Sneed in USF. All the journals launched by DRJ Publishers Incorporation is legal and several of them have obtains ISSN from Library of Congress of the U.S.

4. I never use any money, personnel, or physical resource from USF to benefit DRJ Publishers Incorporation. The income of DRJ Publishers Incorporation is mainly from consulting, editing, and publishing work. DRJ Publishers Incorporation has been paying federal and state tax regularly which is reflected in my annual tax returns to IRS and State of Florida.

5. I have no intention to hide anything that is supposed to report to USF. I have obtained approvals for Dr. Sneed for all my travels and reported them at ROAD of USF Health. I have reported all potential conflicts of interest including my role in DRJ Publishers Incorporation at eDisclosure. After November 23, 2016, I have been blocked from entry into these websites from my home computer and so I cannot update my reports in 2015 and 2016.

6. Please be advised that I have a long-term collaborative relationships with those China institutes or hospitals you have mentioned in your letter. For example, I have more than 20 years' close collaboration with Xiaolan People's Hospital in Zhongshan, China. Since I joined USF in 2010, I brought these partners to USF.

7. For the money transactions in my personal or business accounts you show, they are totally unrelated to my duties and work at USF. The money is clean, lawful, and taxed. I have reported all the incomes and costs to China State Administration of Taxation (SAT) and U.S. IRS and State of Florida Department of Revenue.

8. For a few preliminary memorandum of understanding signed by me, I think I have been authorized by my previous supervisor Dr. Klasko who has instructed me to aggressively promote our medical and health science programs and CAMLS to China and other Asian countries (**Attachment 3**). After we returned from China, I have followed up for the formal MOU procedures via Dr. Sneed and Dr. Klasko's offices.

Now, I list some misconduct and incompetence of Dr. Sneed that are against USF policies and regulations and you should investigate:

1) Dr. Sneed has registered an incorporation called "KOBRA Incorporation" since September 2006. He is one of the Directors for "Gamma Micron Educational Services Inc." located in St. Petersburg, FL (**Attachment 4**). I do not think he has reported his these activities annually to USF Health.

2) I have fully supported the three trips by Dr. Sneed to China, including plane tickets, accommodations, meals, etc. For the trip to Zhongshan, China, in 2011, Xiaolan People's Hospital has paid him $1,000 cash as compensation via my hands. I do not think he has reported this to USF Health and IRS.

3) For the three trips to China, our China partners have sent precious gifts to Dr. Sneed. I do not think he has reported all these to USF Health. I see he keeps all these gifts at his office. I also suspect that he have been paid by USF for per diem for the periods when he visited China.

4) Dr. Sneed just appoints people based on his favoritism and he treats the College of Pharmacy as his personal kingdom. His administration philosophy is *"Those who go with him will prosper, while those who resist will perish"*. When Dr. Sneed wanted to hire someone or promote someone at my department, he forced me to initiate the appointment procedure and paper work.

5) As the Founding Chair of Pharmaceutical Sciences since 2010, I do not know my Departmental budget per year since Dr. Sneed controls everything and keeps it as secrets. The transparency lacks and the College of Pharmacy does not have a Budget Committee. My Department has recruited more than 10 new faculty since 2011, but I have never seen their offer letters.

6) Dr. Yashwant Pathak was initially appointed as the Associate Dean for Faculty Affair and Associate Professor in 2010 with my department as his host one. However, he was promoted to full professor in 2013 without any of his application materials seen by me.

7) In May 2013, I found our departmental lab manager Ms. Yanbin Dong (she reported to me that time) had very poor performance and misconducts. I had determined to terminate her

employment with my department. But Dr. Sneed brutally refused my decision and moved Ms. Yanbin Dong to our Department of Pharmacotherapeutics and Clinical Research, and thus avoided the punishment. Ms. Yanbin Dong has very close relationship with our College Manager Ms. Maria Rutter so Maria asked Dr. Sneed to protect Ms. Dong. I have complained this to Dr. Klasko in 2013 (**Attachment 5**).

I am tired of listing more misconduct and incompetence for Dr. Sneed. I strongly urge you and USF President to conduct an extensive and independent investigation on Dr. Sneed's wrongdoings when he was appointed as the Founding Dean of Pharmacy and Associate Professor since November 2009.

In a word, I completely disagree to the planed termination of my job and the reasons provided in your letter dated February 18, 2016 when you have just gathered a pile of my bank statements, my published articles, property information, unverified letters from other people, and even blackmail without known origins.

For my case, I trust that only the judicial systems in the U.S. and China can tell the truth and find justice for me.

Best regards,

Professor Shufeng Zhou, MD & PhD,
College of Pharmacy, USF Health, Tampa, FL33612.
Email: shufengzhou2006@hotmail.com
Phone: 813 505 1507 (Mobile); 813 405 4718.

Cc:
Dr. Judy Genshaft, PhD, President
University of South Florida (USF) System
Office of the President, 4202 E Fowler Ave, Tampa, FL 33620.

Dr. Ralph Wilcox, Ph.D., Provost & Executive Vice President
University of South Florida
Office of the Provost, 4202 E Fowler Ave, CGS 401, Tampa, FL 33620.
Tel: 813 974-8347; Email: rcwilcox@usf.edu.

Mr. Gerard Solis, JD,
Senior General Counsels,
Office of the General Counsel, University of South Florida,
4202 E. Fowler Avenue, CGS 301, Tampa, FL 33620.



March 24, 2016

Shu-Feng Zhou, PhD
Professor
College of Pharmacy
16410 Burniston Drive
Tampa, Florida 33647

      Re:    Notice Termination of Employment for Cause

Dear Dr. Zhou:

This letter is your notification of the Termination of your employment for Just Cause from your position as a Professor in the College of Pharmacy (College) and all joint appointments in any other Colleges within the University of South Florida (USF or University). University records will reflect that you are terminated effective as of the date of this letter. This action is due to your misconduct or incompetence as set out in USF Regulation 10.112(1)(b) and is thus based on Just Cause. See **Attachment 1**. As specifically outlined at the end of this letter, you have the right to file a Grievance challenging the termination of your employment for just cause based on misconduct or incompetence.

I have considered your entire March 4, 2016 letter (March Letter) delivered to me in response to the Notice of Intent to Terminate letter dated February 18, 2016 (Notice of Intent). In the March Letter you made various allegations concerning the misdeeds of others; in accordance with normal University practice, those allegations will be reviewed by the appropriate University offices. However, the statements concerning the alleged actions or omissions of others will not insulate you from the consequences of your own conduct that violated University Regulations, Policies or Procedures.

You previously received a notice of Non-Reappointment and by letter dated January 8, 2016 I extended the non-renewal end date to November 2016, so that you would have received the one year's notice period under that action. There is nothing further to address on this point. You alleged discrimination in several previous communications, and the University's Office of Diversity Inclusion and Equal Opportunity (DIEO) informed USF Health that you met with them in late 2015 regarding your concerns. The allegations of discrimination made in March Letter are not new, and you have already met with DIEO to discuss these same concerns, thus I will defer to DIEO as it is within their authority and responsibility to address discrimination complaints.

In the March Letter, you offer a general disagreement with my proposed termination action, yet provided only cursory and immaterial responses to rebut the issues of concern previously identified in the Notice of Intent. Specifically, you did not deny the associations or relationships with entities outside the University; you ignored or rationalized your failure to comply with Outside Activity reporting obligations imposed on you as a member of the University Faculty; you did not provide any information or a denial regarding the unauthorized receipt of funds paid to you by students, scholars, various hospitals or corporations; and, you said nothing to dispel the concerns regarding the misuse of University resources/personnel or the misuse your position with the University for personal gain (see below for more information).

In response to the concerns outlined in the Notice of Intent, you attached to the March Letter

Shu-Feng Zhou, PhD
March 24, 2016
Page 2 of 9

a letter signed by my predecessor appointing you as an Associate Vice President (AVP) of Global
Medical Development (AVP Letter)[1]. The AVP Letter has no language removing or modifying your
obligation to comply with any University Regulation, Policy or Procedure applicable to your
employment. Further, I read nothing in that letter that permitted you to accept and retain funds from
outside the University and/or not report your outside relationships or activities (even those pre-dating
your employment at USF). The AVP Letter does not authorize any of your incorrect conduct and the
March Letter failed to describe any positive benefit to USF from your AVP appointment that would
justify such conduct. Finally, the AVP Letter states that it expired on June 30, 2013; there is no
evidence that it was extended, thus any of your activities with entities outside the United States after
June 2013 were clearly not official activities undertaken at the direction of the University.

USF employees are supported by public funds and they must maintain the public trust in
performing their University duties. They must also hold to the University's ethical and conduct
standards in regard to outside activities and conflicts of interest. You failed to act in a manner
that complied with the requirements of applicable University standards by engaging in a number
of outside activities, including several that were compensated, without making the required prior
disclosure or obtaining the required approvals. You also used your position and other University
resources for your personal gain.

You unquestionably received training on outside activity reporting and conflict of interest;
in some cases, before or during engaging in several of the inappropriate activities. In the March
Letter you not only acknowledge the existence of some of your outside relationships that are
discussed below, you acknowledge that you were engaged in your own personal business
venture(s) and that you had outside sources of income—yet you did not indicate that you made
any of the required disclosures in ROAD prior to engaging in these activities while employed at
USF. Despite your assertion that one activity (DRJ Publishing) was disclosed in the University's
eDisclose system, as discussed below eDisclose is not available for USF Health faculty to
disclose outside activity and eDisclose explicitly provides a link to the ROAD system for USF
Health faculty system once they have completed other specific Florida Code of Ethics
disclosures. USF Health faculty may only use the ROAD system to disclose their Outside
Activity

Contributing to my decision, is the Written Reprimand issued to you on November 30,
2016. That action resulted from your poor judgment, which is additionally demonstrated in the
totality of the conduct described in this letter. Based on these violations and the prior discipline,
termination of your employment at the University for misconduct or incompetence is appropriate.
The reasons for this action are presented below in greater detail.

## BACKGROUND INFORMATION

Employees of universities within the State University System are considered to be public
employees in Florida. Various State Laws, and University Regulations and Policies, govern your
conduct as an employee of the University of South Florida. It is under the authority of Florida
law that the University enacts its own Regulations and Policies.

USF Regulation 10.107 states that University employees "are required to observe, in all
official acts, the highest standards of ethics and conduct consistent" with the State of Florida law
for public employees. USF Policy 0-027 sets out more detailed guidance on the professional

[1] There is no stipend offered in the letter of appointment.

Shu-Feng Zhou, PhD
March 24, 2016
Page 3 of 9

obligations of a member of the University's faculty with respect to Conflicts of Interest, Conflicts of Commitment and Outside Employment. See Regulation and Policy, **Attachments 2a and 2b**, respectively.

> USF Policy 0-027, II.F.4.a. defines Outside Activity as

> any employment, private practice, private consulting, teaching, research, service on boards or commissions, or any other activity, compensated or uncompensated, which is not part of the employee's assigned duties and for which the USF System does not provide compensation.

> USF Policy 0-027, II.F.4.b Conflict of Interest or Commitment is defined as

> any unresolved conflict between the private interests of the employee and the public interests of the USF System, including conflicts of interest specified under Florida Statutes; or any activity which interferes with the full performance of the employee's professional or institutional responsibilities or obligations

> USF Policy 0-027, II.F.5.a. requires that an employee who intends to "engage in outside activity <u>must disclose and receive prior approval</u>" when "the activity involves more than incidental use of USF System facilities, equipment or services; or...the activity is one that the employee should reasonably conclude may create a conflict of interest or commitment" whether the activity is compensated or not. Section II.F.5.b goes on to state that a member of the "Faculty (9 & 12 month) who propose to engage in any professional, <u>compensated outside activity must disclose and receive prior approval</u> for such outside activity." (Emphasis added)

> In 2007, to facilitate the needs of faculty in reporting their Outside Activity, USF Health created the web-based ROAD system. In 2014, the University unveiled the eDisclose system (for the annual reporting of certain Florida Code of Ethics disclosures required of all University faculty and employees and outside activity reporting for any non-USF Health Faculty employee). At that time, the University's Board of Trustees also approved USF Policy 0-027, II.F.5.d. which specifically retained the requirement that USF Health faculty report their Outside Activity only in the ROAD system. You were originally hired in 2010, and at all times during your employment at USF the ROAD system existed and you were expected to use it to report your outside activities or employment.

> In your role as the former Chair of the Department of Pharmaceutical Science (Department), College of Pharmacy, you had discussions about the ROAD system with administrative officials at USF Health in order to provide information to the faculty in that Department. Also, at your request, Faculty Affairs made a presentation on the ROAD system, the obligations set out in University regulations to report on these activities, and the potential for conflicts of interest with University employment at a Department Faculty meeting at which you were present; thus, you had actual knowledge of the requirement and processes for reporting Outside Activities and University requirements relative to conflict of interest.

## A. <u>CONFLICT OF INTEREST/CONFLICT OF COMMITMENT/OUTSIDE EMPLOYMENT</u>

> A comparison of items reported by you in ROAD after your arrival at the University (See ROAD Activity Report, **Attachment 3**), information publicly available or located in your University office, and/or finally divulged by you in the March Letter, confirms that you engaged in

Shu-Feng Zhou, PhD
March 24, 2016
Page 4 of 9

Outside Activities (both compensated and uncompensated) which were never reported to the University during your employment at the University. Specifically, and as more fully described below, you engaged in Outside Activities which provide personal benefits to you from:

- Dove Medical Press
- DRJ Publishing, Inc.
- Consulting
- External Review of Research Applications

   1. Dove Medical Press (Dove):  You failed to provide any explanation regarding your involvement with Dove, and in fact do not mention Dove at all in the March Letter. Based on the lack of any response in your March Letter, the University's findings in the Notice of Intent are deemed to be true for purposes of the decision to end your employment.

   You held a position as an Editor with Dove that appears to have lasted at least through the summer/early fall of 2015. See **Attachment 4**. The fact that your relationship with Dove may have existed prior to joining the University did not eliminate your obligation as a faculty member to disclose it. This Outside Activity was not disclosed in ROAD as required by USF Policy 0-027. See **Attachments 2.b and 3**.

   Significantly, University financial records show the College paid approximately $46,000 to Dove to publish scientific articles on which you were listed as an author at the same time you were both an Editor with Dove and employed at the University. Your role with Dove was not disclosed before, during or after the time the University delivered these payments to Dove. The first payment made by the College occurred in September 2014, with several additional payments occurring in 2015. See **Attachment 5**. March 2015 bank records show that you received an honorarium from Dove (see **Attachment 4**) during the time the College made payments to Dove to publish articles on which you are listed as an author. The fact that you directed or authorized payments of any amount from the College to a business entity with which you had an official or contractual relationship to serve as an Editor constitutes a violation of USF Policy 0-207 II.C.2. which states:

   No employee of the USF System shall have or hold any employment or <u>contractual relationship with any business entity that is doing business with the USF System and shall not, while acting in a private capacity</u>, rent, lease, or <u>sell any</u> realty, <u>goods, or services to the USF System</u>, unless the contract to rent, lease, or sell was entered into prior to the employee beginning employment in the USF System; unless an exemption contained in Florida Statutes §112.313 (12) applies.[2] (Emphasis added, see **Attachment 2.b.)**

   2. DRJ Publishing, Inc. (DRJ): You acknowledged in your March Letter that you incorporated DRJ in the State of Florida and that you derived income from it. You specifically stated that DRJ "business operating, consulting service, and running are fully separated from my duties and work assigned by Dr. Sneed in USF." Such activity, operating a personal for profit business, is exactly what the Outside Activing reporting obligation set out in University Regulation is supposed to capture. So, despite asserting that you had "no intention to hide anything that is supposed to be reported to USF" University records indicate differently as this activity was never reported.

---

[2] None of the exemptions listed in §112.313(12), Fla. Stat. apply to this situation.

Records publicly available from the State of Florida show that you incorporated DRJ in 2012. You did not submit a disclosure in ROAD regarding the existence of this Florida for-profit corporation and the positions you hold in it. As of March 24, 2016 you are listed as the President and Registered Agent according to the Florida on-line corporate record information. As outlined above, such a disclosure should have been made in ROAD—of which you were aware considering the number of entries you did submit in ROAD.  See **Attachment 3**. To claim in your March Letter that you disclosed DRJ activity in eDisclose is wholly inaccurate and disingenuous as the eDisclose system is not available to USF Health Faculty for Outside Activity reporting; the eDisclose system administrator confirms, that even if you could report it, there are no recorded disclosures by you in eDisclose of any Outside Activity.

State records show that DRJ is still an active corporation in Florida and it filed the required annual report in February 2016. You admitted the existence of DRJ and the associated Outside Activity in the March Letter and the University records show that you failed to disclose this Outside Activity in ROAD (see **Attachment 3**) as required by USF Policy 0-027 (see **Attachment 2.b.**) for over three (3) years. See State of Florida records, **Attachment 6**.

Websites for a number of journals published by DRJ include your University address as the apparent contact point for the journal. In the March Letter you state that you never used "any money, personnel, or physical resource from USF to benefit DRJ". The extensive time that you would have necessarily devoted to DRJ, means, however, that such resources were either used and/or had a conflict of commitment between your full-time assignment at USF and your DRJ work. The use of the University address does not support your claim that your DRJ work was "fully separated" from your appointment as a faculty member in the College. Rather, the use of the University address served to create a false impression that the University approved of and housed these journals owned/published by your privately owned for profit company when, in fact, no such approval was requested or given. (See various DRJ journal records, **Attachments 7a, 7b, and 7c**).

You used your faculty position at the University for your personal benefit (i.e. to create the appearance of a sponsorship for DRJ by USF). A January 2015 bank statement shows that DRJ issued a check to you in the amount of $5000. A further personal benefit appears on the DRJ website via a payment schedule for publishing articles in journals under the DRJ umbrella[3]. See web pages with fee information and bank information, **Attachments 8a and 8b**. The extent of this activity is significant since multiple journals are listed on the DRJ website. Given the amount of time that would necessarily have been devoted to publishing and editing any one of them, let alone the sixty-five plus (65+) journals that are listed as part of DRJ, it would appear that a conflict of interest is unavoidable in this activity. See **Attachments 9 and 10**.

3. <u>Consulting work with Chinese Hospitals</u>: In the March Letter you acknowledge "long-term collaborative relationships with those China institutes or hospitals mentioned" in the Notice of Intent and specifically admit to an arrangement with Xiaolan People's Hospital of more than twenty (20) years. You additionally stated that you "brought these partners to USF". These entities may have personally benefited you; however, University records do not support any

---

[3] Although information in Attachments 5a-c does indicate that the base fee of $880 is waived, the fact remains that there is a base fee and additional charges depending on the type of services which a researcher requires and is willing to pay for (including apparently actually writing the articles for publication at a cost of $6,800.00—see Attachment 6a).

Shu-Feng Zhou, PhD
March 24, 2016
Page 6 of 9

beneficial relationship with the University.

For example, during your USF employment, University records do not show any funds transmitted directly to the College from any of your "partner" hospitals. Rather, past correspondence supports what you have now confirmed in the March Letter—that you engaged in personal consulting (the word used by you in the various communications attached to this letter) activities with Chinese hospitals and/or Chinese corporations. And it is clear that you personally received substantial payments for such consulting. See **Attachments 11 a-g.**

Consulting with these entities was not part your assigned faculty duties at the University, and you did not disclose any of these admitted personal relationships with any of these outside entities in ROAD. The mere fact that you had long-standing arrangements in no way eliminated your obligation to disclose them once you were employed by the University. Once again, at the same time you failed to disclose reportable relationships you were having multiple discussions regarding the use of the ROAD system in your role as a Department Chair. Thus, we can only conclude that your consulting for outside entities was for your personal benefit in violation of University rules concerning Conflict of Interest and/or Conflict of Commitment.

4. Reviewing research applications for the Food and Health Bureau, Government Secretariat, Hong Kong Special Administrative Region: You state in your March Letter that you had "relationships with those China institutes" that were included in the Notice of Intent. You engaged in and received compensation from the Chinese government for reviewing research proposals and did not disclose such activity in ROAD. See **Attachments 12a and 12b.** This is unreported Outside Activity that presents a conflict with your primary employment with the University.

In sum, failing to disclose the existence of the above described Outside Activities constitutes a violation Regulation 10.107 and USF Policy 02-027, Sections II.4.b, II.5.a.v, II.5.b, and II.5.d.


## B. MISUSE OF UNIVERSITY PERSONNEL, PROPERTY OR EQUIPMENT

As discussed above, you clearly used your University office and University issued equipment for personal matters at more than incidental levels. The University provided both the office and the computer equipment to enable you to perform your assigned work duties, duties for which the University provided compensation, yet your USF office contained a great deal of your personal business records and information. See, for example **Attachments 9, 10, 11a-g, 12a-b and 13**. Your denial that you never used personnel is without foundation as shown by an email sent by a University employee during a regular business day and using his University contact information to correspond with a representative of the home owner's association for one of your real properties. Since such an email would only have been sent at your direction, this employee clearly was working on your personal business. See **Attachment 13**. This use of University resources and/or employees for your personal gain is a Conflict of Interest in violation of USF Policy 0-027, II.5.a.i.

## C. MISUSE OF YOUR POSITION AT THE UNIVERSITY

1. Funds for Students/Visiting Scholars: You did not provide any explanation regarding the deposits made by visiting students or scholars into non-USF accounts. The information

Shu-Feng Zhou, PhD
March 24, 2016
Page 7 of 9

contained in several documents reviewed show that funds to support visiting students/scholars were deposited to accounts that you personally control or controlled. Specifically, banking records show the electronic transfer of funds from China in the amount of $12,000 to support eight (8) students (short-term exchange) in August 2013. These funds were deposited into your personal account (account number ending in 4590). See **Attachment 14**. Additionally, funds from two (2) visiting scholars in the amount of $6000 (transaction date January 5, 2015) were deposited into the DRJ business account (account number ending in 9035) controlled by you, and the amount of $20,000 (transaction date March 20, 2015) was deposited into your personal account (account number ending in 4590). See **Attachment 8b**.

Conversely, there is no record of receipt by the University of any funds from these students or scholars. Your acceptance of these funds resulted in unauthorized compensation under USF Policy 0-027, II.A.4. and could constitute misappropriation of funds that were due the University to support USF visiting students or scholars.

2. Unauthorized Contracts/Relationships: Based on several documents and drafts of documents, you engaged in efforts to bind USF to contractual obligations with various Chinese hospitals or other entities. You had no signing authority in your position as a Department Chair, Associate Dean, or Associate Vice President to sign any contract which would bind USF—and the AVP Letter to the March Letter does not contain any written authorization for you to sign any agreement or contract to bind the University. There is no record to demonstrate these contracts were ever presented to or properly reviewed by University counsel and senior leadership of the University with the authority to enter into such agreements. See **Attachments 11b, 11g, and 15**. In addition, these arrangements were not presented to your colleagues and/or College faculty for an assessment of possible educational or other value to USF.

3. Money paid by foreign entities to you: In the March Letter you confirmed your "long-term collaborative relationships with those China institutes or hospitals" outlined in the Notice of Intent. As you outlined in **Attachments 11c, and 11d**, you were personally paid for "consulting" work performed for Xiaolan People's Hospital, Shunde People's Hospital and Ningxia Medical University General Hospital and detailed that the following amounts were deposited in your personal account(s) for your consulting activities.

| | |
|---|---|
| $ 6,400.00 | deposited 01/22/14 |
| $50,000.00 | deposited 01/22/14 |
| $23,985.00 | deposited 02/25/14 |
| $29,985.00 | deposited 02/25/14 |

Again, while you may have had these relationships prior to your University employment, that in no way changed the obligation you had as a member of the USF faculty to disclose compensation received from them for your outside activity. Despite your claim that you "brought these partners to USF", in fact, you accepted direct personal payments from them using your official position with the University to secure a privilege or benefit for yourself in violation of USF Policy 0-027, II, B.1. Any compensation personally received violates USF Policy 0-027, II.A.4.

4. Yunnan Changning Dekang Biotechnology Co., Ltd (Dekang): The March Letter fails to discuss or explain your relationship with Dekang, thus I deem all facts contained in the Notice of Intent as admitted. The research agreement between USF and Dekang provided for $100,000 in funding (paid into a USF Foundation account) to support specified research efforts. Those efforts were outlined in the research proposal document you submitted to the USF

Shu-Feng Zhou, PhD
March 24, 2016
Page 8 of 9

Division of Sponsored Research in July 2012. Your research proposal explicitly certified that you had no Conflict of Interest or Outside Activity. The research was to occur between August 2012 and August 2013. See **Attachment 16a**. The College reports that you had signatory authority over this account funded by Dekang and that activities to support the research funded by Dekang were part of your assigned faculty research activities.

Records show that you accepted the following direct payments from Dekang to your personal account (account ending in 4590; See **Attachments 11d and 16b**):

| $ 4,975.00 | deposited 11/23/11 |
| $ 9,644.32 | deposited 04/24/12 |
| $24,975.00 | deposited 12/05/13 |

You received these amounts before and after the term of the research agreement between USF and Dekang. In terms of the 2012 payment you accepted this money from Dekang during the time documents to support the research gift would have been prepared and/or imminently under consideration by the College of Pharmacy and the USF Division of Sponsored Research. The Research Agreement shows you as being the Principal Investigator (PI). Clearly, during that period of time, your activities contemplated under the USF/Dekang agreement would have been part of your University assignment in your role as the PI. See **Attachment 16a**.

In addition, your personal acceptance of money from Dekang raises issues about the integrity of any research you conducted; allowing the perception that you were independently being compensated to secure a specific research result. This financial arrangement was not disclosed through ROAD or through the University's Office of Research Integrity. As such, receipt of this money would appear to be a Conflict of Interest under 0-027, II.B.1. Such a failure would be a violation of USF Policy 0-309, III.B. See Research Misconduct policy, **Attachment 17**.

In sum, the actions listed in this section constitute violations of USF Policy 0-027, II.A.4, II.B.1, II.F.1, II.F.2, II.F.5.a.v, II.F.5.b, and a violation USF Policy 0-309, III.B for which you can be disciplined under 0-309, VI.

## CONCLUSION

Based on the facts presented you repeatedly failed to disclose substantial outside activities and you personally benefited from those activities, at the expense of the University and ultimately in violation of the public trust.

Therefore, the University issues this **Notice of Termination of your Employment For Cause**, effective as of 5:00 pm on the date of this letter. If you elect to file a Grievance challenging my decision, you must do so within thirty (30) calendar days, in this case no later than 5:00 pm, Monday, April 25, 2016. You will also need to follow the requirements outlined in USF Regulation 10.113(8) and you are to deliver the written grievance to the Office of Faculty Affairs, CMS 3063, as my designee to accept delivery of any Grievance. Under the requirements of USF Regulation 10.1139(8)(c), it is your obligation to file on time, sign the grievance document and include all the information required to be contained in a Step 1 grievance. If you fail to meet any of these initial filing requirements set out in Regulation 10.113(8), you have no right to expect and the University has no obligation to provide any processing of the Grievance.

Shu-Feng Zhou, PhD
March 24, 2016
Page 9 of 9


Your compensation ends as outlined in this letter. You should contact the USF Division of Human Resources at 813-974-9092 about any questions you may have regarding your benefits.

Please direct questions in regard to this notice to Olga J. Joanow, Director, Faculty Relations, USF Health. You may reach her at 813-974-1676 or ojoanow@health.usf.edu.


Charles J. Lockwood, MD, MHCM
Senior Vice President, USF Health
Dean, USF Health Morsani College of Medicine

cc:    Kevin Sneed, PharmD, Dean, College of Pharmacy
       Faculty Affairs
       Office of the General Counsel

Attachments 1-17

April 1, 2016

Professor Charles J. Lockwood, M.D. & M.H.C.M.,
Senior Vice President, USF Health
Dean, Morsani College of Medicine, USF Health, USF
12901 Bruce B. Downs Blvd., MDC02
Tampa, FL33612.

**Re: My Response to your letter dated March 24, 2016**

Dear Professor Lockwood:

Thanks for your letter dated March, 2016. In this letter, you have determined to terminate my employment with USF. I do not want to say too much and I think it is about time for me to end the war from my side.

Please allow me to highlight:

1. I have been working very diligently for USF College of Pharmacy since I joined USF in August 2010. Please consider my significant contributions to USF when you make your disciplinary decision. I have lost everything since your first letter dated November 16, 2015.
2. I strongly ask you to review your disciplinary decision against me. I wish you to be fair to each of your employees who work for you and USF.
3. I never use any money, personnel, or physical resources from USF to obtain personal gains. I never collect any money from our students and visiting scholars. The money you listed in your letter are primarily reimbursements for the travel costs. All the money collected from visiting scholars are deposited to a special account approved by USF Controller's Office. It has now about $43,000.00. If you think my small business DRJ Publishers Inc. is not Ok, I will close it although I have invested substantial money on it.
4. If you have found any solid evidence that I have caused any damages or losses to USF, I am willing to compensate.
5. Dr. Sneed is not my enemy, he is my supervisor and colleague. He gave me the job and recruited me to USF from Australia. I appreciate his guidance, help, and encouragement for my work when I have difficulties.
6. I will stop any legal actions and complaints against anyone from USF. I have instructed my lawyers in China and US to stop all the actions.
7. I may have made some mistakes in my work, but they are not misconduct or incompetence. I apologize for these mistakes and the inconveniences caused. In most cases, Dr. Sneed has help me avoid these stupid mistakes.
8. I may have shown some emotional altitude to you, Dr. Curran, Dr. Sneed, and other colleagues, I apologize for this.
9. Anyway, I am a doctor plus scientist, I love science and I want my research can benefit our patients in the near future and I hate conflicts. Attached is my recently published new book

about the structure, function, regulation, and polymorphism of human CYP2D6. You and Dr. Sneed are acknowledged in the front page of my new book. You can get a copy from my office.

For whatever disciplinary actions you have against me, I will accept it if it is fair, reasonable, and evidence-based.

Best regards,

Professor Shufeng Zhou, MD & PhD,
College of Pharmacy,
USF Health, Tampa, FL33612.
Email: shufengzhou2006@hotmail.com
Phone: 813 505 1507 (Mobile); 813 405 4718.

Cc:
Dr. Judy Genshaft, PhD, President
University of South Florida (USF) System
Office of the President, 4202 E Fowler Ave, Tampa, FL 33620.


Dr. Ralph Wilcox, Ph.D., Provost & Executive Vice President
University of South Florida
Office of the Provost, 4202 E Fowler Ave, CGS 401, Tampa, FL 33620.


Mr. Gerard Solis, JD,
Senior General Counsels,
Office of the General Counsel, University of South Florida,
4202 E. Fowler Avenue, CGS 301, Tampa, FL 33620.

# UNIVERSITY OF SOUTH FLORIDA
## University Controller's Office

MEMORANDUM

DATE:           April 1, 2014

TO:             Shufeng Zhou, MD, PhD, Vice President of Global Medical
                Development, Associate Dean of International Research,
                Professor & Chair, Pharmaceutical Sciences

FROM:           Jennifer Condon
                Chair, EBA Subcommittee

RE:             EBA  FY14.22

ACTIVITY TITLE: **USF COP International Research Services**

Your request to operate an educational business activity has been reviewed
and is approved to operate:

| | |
|---|---|
| **X** | In the Auxiliary Trust Fund – Budget Basis |
| | Continue to Operate in Existing Account |
| | As a Fund Raiser in the Foundation |
| | As a Friend Raising Event to Cultivate Alumni/Perspective Donors |
| | Central Billing Authorized |
| | In the Agency Fund |
| | Refer to CME (Continuing Medical Education) |
| | Refer to Continuing Education |
| | Notes: |

**\*If this is a new account, please contact Brian Stanley at 974.4721
for a Request to Establish / Update a Chartfield form and return to
him at ALN147.**

Copy to:  Brian Stanley
          Leigh Ann Drexler



**Math Awareness Month Sale**

20% Off Math Titles & 10% Off All Others

Print titles only. Limited time. No promo code necessary.



Preview this Book

## Cytochrome P450 2D6: Structure, Function, Regulation and Polymorphism

Shufeng Zhou

March 9, 2016 by CRC Press
Reference - 508 Pages - 30 Color & 182 B/W Illustrations
ISBN 9781466597877 - CAT# K20857

**For Librarians**

Available on CRCnetBASE >>

**Select Format:**

Hardback ⌄

**Quantity:**

1

USD

was $249.95
$**224**.96
SAVE ~$25.00

Add to Cart

Add to Wish List

**FREE Standard Shipping!**

## Additional Book Information

## Features

- Provides the first single source of current knowledge of CYP2D6, an important drug-metabolizing enzyme involved in 25% of liver detoxification activities
- Covers recent progress in the preclinical and clinical research
- Discusses strategies to avoid adverse drug reactions
- Includes more than 150 illustrations
- Points out future directions for research of human CYP2D6

## Summary

Cytochromes are proteins that catalyze electron transfer reactions of well-known metabolic pathways and are classified in various superfamilies. The CYP, or P450, superfamily accounts for 90% of the oxidative metabolism of clinical drugs. One member of this superfamily, P450 2D6 (or CYP2D6), singlehandedly metabolizes about 25% of all medications in the human liver. **Cytochrome P450 2D6:**

**Structure, Function, Regulation, and Polymorphism** reviews the current knowledge of CYP2D6 as well as the maturing body of evidence indicating its significance to clinical and pharmacological researchers and practitioners.

This book focuses on the critical role CYP2D6 plays in the human liver. It examines the genetic, epigenetic, physiological, pathological, and structural factors of the gene that govern the highly variable metabolism of a number of drugs in clinical use. It highlights the impact of the functional roles of CYP2D6 on clinical practice and drug development and also discusses implications for precise medicine, strategies to avoid adverse drug reactions, and paths for future research.

**Cytochrome P450 2D6** is a unique, valuable book focusing on a single but immensely powerful human gene. It provides the first single source of comprehensive information on CYP2D6 that serves as an important reference for medical, biomedical, pharmaceutical, and nursing researchers, practitioners, and students.

## Share this Title

Recommend to
Librarian

April 8, 2016

Professor Charles J. Lockwood, M.D. & M.H.C.M.,
Senior Vice President, USF Health
Dean, Morsani College of Medicine, USF Health, USF
12901 Bruce B. Downs Blvd., MDC02
Tampa, FL33612.

**Re: Filing my Grievance about your disciplinary action against me**

Dear Professor Lockwood,

Thanks for your letter dated March 24, 2016. In this letter, you have determined to terminate my employment with USF effective from March 24, 2016.

I wrote a short letter to you on April 1, 2016 as my immediate response. Now I am writing to file my grievance about your disciplinary action against me.

In my letter to you dated March 1, 2016, I states "When I have major conflicts with my previous supervisor Dr. Kevin Sneed and officially complained about his misconduct and incompetence, it is against our university regulations and Florida laws to instruct and allow him to investigate on what I have done wrongly in the past five and half years at USF. Please be advised that as an employee of USF, a public university, I am protected against unreasonable search and seizure at work by the Fourth Amendment of U.S. Constitution." You did not respond to this point in your letter dated March 24, 2016.

In my letter to you dated March 1, 2016, I also stated "In your first non-reappointment letter dated November 16, 2015, you maliciously and intentionally gave me only three months for transition although our University Regulation USF10.110 has clearly indicated that "One year's notice for all faculty members with two (2) or more years of service, with employment in the summer conditional upon the summer assignments procedures in the relevant department or unit" (see Attachment 1)." You just responded that you had extended it to 1 year. It is clear that your malicious mistake severely damage my rights as one of your employees.

When I complained about Dr. Kevin Sneed and Dr. Robert Deschenes's prostitute buying behaviors and provided legal evidence to you (**Attachments 1 & 2**), you refuse to investigate both of them. In contrast, you have extensively investigated me and found a pile of my bank statements from my office computer and immediately concluded that I violated USF regulations and polices and fired me without verifying and validating any of the so-called "evidence". Your altitude and action towards your employees are very discriminatory without any justification. As a senior administrator, you must be fair to each of your employees.

I never use any money, personnel, or physical resources from USF to obtain personal gains. I never collect any money from our students and visiting scholars. The money you listed in your

letter dated March 24, 2016 are primarily reimbursements for the travel costs generated by USF Health leaders. All the money collected from visiting scholars baes on USF policies has been deposited to a special account approved by USF Controller's Office (**Attachment 3**). It has now about $43,000.00 under the control of Dr. Sneed.

I have made some mistakes in my work due to ignorance and carefulness, but they are not misconduct or incompetence. I apologize for these mistakes and the inconveniences caused. In most cases, Dr. Sneed has helped me avoid these mistakes.

Although Dr. Sneed hates me and has destroyed my career and health, I appreciate his guidance, help, and encouragement when I worked for USF. He gave me the job and recruited me to USF from Australia. In fact, Dr. Sneed did not need to ask you to fire me. If he could talk to me in a face-to-face manner before November 16, 2015, I would leave USF silently and he does not need to transfer his real property.

To show my gratitude to Dr. Sneed, I will stop any legal actions and complaints against anyone from USF. I have instructed my lawyers in China and US to stop all the actions against Dr. Sneed.

Jesus has helped me to calm down. What I am asking for is: please consider my significant contributions to USF and reconsider your disciplinary decision against me. Please allow me to work diligently for USF 2 years more and I will find a job and resign.

Best regards,

Dr. Shufeng Zhou, MD & PhD,
Email: shufengzhou2006@hotmail.com
Phone: 813 505 1507 (Mobile); 813 405 4718.

Cc:
Dr. Judy Genshaft, PhD, President
University of South Florida (USF) System
Office of the President, 4202 E Fowler Ave, Tampa, FL 33620.

Dr. Ralph Wilcox, Ph.D., Provost & Executive Vice President
University of South Florida
Office of the Provost, 4202 E Fowler Ave, CGS 401, Tampa, FL 33620.

Mr. Gerard Solis, JD,
Senior General Counsels,
Office of the General Counsel, University of South Florida,
4202 E. Fowler Avenue, CGS 301, Tampa, FL 33620.



June 23, 2016

Shu-Feng Zhou, PhD
Professor
College of Pharmacy
16410 Burniston Drive
Tampa, Florida 33647

      Re:    Step 1 Response

Dear Dr. Zhou:

We met on May 27, 2016 at the Step 1 meeting for your Grievance disputing the March 24, 2016 Notice of Termination which ended your employment for just cause based on misconduct or incompetence as set out in USF Regulation 10.112(1)(b).

Prior to the meeting you received information advising that you would have the opportunity to provide information and/or documentation to support your position that the decision to terminate should be overturned. Additionally, you were provided information concerning the requirements set out in the USF Faculty Grievance rule, specifically the need to identify any University Regulation, Policy or Procedure that you believe was violated by the University's decision. Neither of these requirements should be new to you based on the previous grievance you filed in late 2015.

Neither your April 1, 2016 letter to Dr. Lockwood nor your April 8, 2016 Grievance included a citation to any University Rule, Policy or Procedure that you believe had been violated in the decision to terminate your employment. When additionally provided the chance to do so at the Step 1 meeting, you again failed to identify any University Rule, Policy or Procedure in support of your Grievance. Rather you specifically stated that you had nothing to add to your April 8, 2016 letter.

You did, however, claim that your attorney advised you that you had Fourth Amendment protections "against unreasonable search and seizure at work" presumably with respect to your office and your computer. The University, as the owner of your office and the computer equipment, does have the right to enter areas in order to ensure that its educational, research and general business operations are maintained appropriately during times of transition. It was apparent that the office assigned to you contained a great deal of personal material mixed in with some University business materials; the volume and types of the personal materials provided clear indications that your University office, computer and/or employees were being utilized more to further your personal business activities than to support any of your assigned activity.

You further claim in your Grievance that the University refused to investigate any of your claims against other University employees. That is not borne out by the records available from and provided to you by the University's Diversity Initiatives and Equal

OFFICE OF FACULTY AND ACADEMIC AFFAIRS • USF HEALTH
University of South Florida • 12901 Bruce B. Downs Blvd., MDC53 • Tampa, FL 33612-4742
(813) 974-5105 • Fax (813) 974-7527 • http://health.usf.edu/facultyaffairs

Shu-Feng Zhou, PhD
June 23, 2016
Page 2 of 4

Opportunity Office (DIEO), as it did review your claims. See **Attachments 1 and 2** (DIEO Investigative Reports). Your claims were dismissed after the University conducted a review of your allegations. There is also an appeal process available to you from a DIEO Final Determination, but that process is outside the authority of USF Health and will not be addressed as part of this Step 1 response.

With one (1) exception, the April 8, 2016 Grievance document is emphatically silent on any discussion of the facts or details outlined by the University in the Notice of Termination. The only reference in the Grievance to a specific determination of the March 24, 2016 Termination notice is your statement "I never use [sic] any money, personnel, or physical resources from USF for personal gain." The totality of the information available to the University does not support this view.

There is no specific information provided on DRJ Publishing, Dove Press, or the hospital or companies that made payments to you. By virtue of your silence on these items, coupled with the lack of any documentation or any substantive information to contradict the University's conclusions, your actions and conduct with respect to what is outlined in the Notice of Termination are deemed to be true and correct in supporting the University's decision to terminate your employment.

To the extent there was any discussion of any of the events described in the Notice of Termination, it was only in answer to questions I asked during the Step 1 meeting and such answers actually support the University's position on your various actions.

Specifically, you stated (the response to your statements is contained below your bulleted remarks):

- The money paid into your DRJ or personal account from Tao Ren and Qing Li was to personally compensate you for services you rendered to them for the data analysis you performed.

This is the heart of the matter concerning your undisclosed outside activity. You engaged in work outside your University assigned duties, and failed to disclose it.

- You used University money to support Tao Ren and Qing Li when they were at the University as visiting scholars, while telling them of the need to pay $3000 each—the money was never paid to the University.

You admitted you were using University money to support Drs. Ren and Qing as visiting scholars, while you concurrently had received or were about to receive $26,000 from them personally. Further, there is no indication that you did anything beyond telling them to provide funds which ensured they would pay the $3000 per person you told them was needed. You personally benefitted from your relationship with these two individuals and the University suffered the expenses of their visit.

- No one ever told you of the obligation to report Outside Activity or Business Activity in ROAD.

Shu-Feng Zhou, PhD
June 23, 2016
Page 3 of 4

You had numerous discussions with Faculty Affairs about ROAD and requested that Faculty Affairs provide training on ROAD at one of your Department faculty meetings—a meeting at which you were in attendance. Your statement in this regard completely lacks credibility.

- A University employee did do work for you on the side but refused payment and should not have used the University email account for that work—work which ended when the employee took another position in the College of Pharmacy.

The email from this employee's USF account was found in your office, thus you clearly had knowledge of the email. There is no record located that you asked the employee to refrain from acting on your behalf while using University email, and you did not state that you tried to stop the employee's use of University email to conduct your personal business.

- Due to the amount of time it takes to have money sent from China, and the fact that there was no EBA account, there was no place for the money for the scholars to be deposited.

College of Pharmacy business officials state that were people who came to USF prior to October 2014 (the date you signed the request for the EBA) yet there was no apparent effort on your part to ensure payments were received from outside USF to support those visiting scholars. There are no deposits made into any College account prior to the creation of the EBA account to support any of the visiting scholars you invited to the University. If deposits had been received by the College for the support of any of the scholars prior to the establishment of the EBA, such funds would have been deposited into some College/University account. There are no records of any such deposits.

College of Pharmacy records show only limited deposits made into the EBA account for the period of time between December 2014 and April 2015. While it is true the EBA account does not exist until later 2014, more scholars came to the University through your efforts that provided support for their activities. As for your point that it takes some time to receive money from China, it would be reasonable then for the University to expect money to have been transmitted after the visits from scholars in 2013, 2014 and 2015—yet that does not appear to have occurred as there are only a few documented deposits in 2014 and 2015 . See **Attachment 3** and **Attachment 4** (List of Scholars and EBA deposit information, respectively).

Conclusion:

The University provided a Notice of Intent to Terminate Employment for Cause (dated February 18, 2016) and you responded to that on March 4, 2016. On March 24, 2016 the University issued the Notice of Termination of Employment for Cause; in response you provided a letter dated April 1, 2016 and a Grievance dated April 8, 2016. You have been provided ample opportunity to provide information or documentation to refute the University's review of the events in question and its ultimate decision to end your

Shu-Feng Zhou, PhD
June 23, 2016
Page 4 of 4

employment. Based on the lack of substantive documentation from you, your own statements at the Step 1 meeting, and the totality of the circumstances, I am upholding the University's decision to terminate your employment on March 24, 2016, and denying your Grievance.

**This concludes the Step 1 portion of the Grievance. If you elect to challenge the Step 1 decision you must file your request for arbitration with the Office of the General Counsel no later than fourteen (14) days after you receive this Step 1 decision, with a copy of your request to Dr. Lockwood's office as set out in USF Regulation 10.113(9)(b). You will also need to follow the requirements outlined in USF Regulation 10.113(9) regarding the documentation required to support your request for arbitration as it is your obligation to file on time, sign the arbitration request and include all of the documents and information required in support of your request. If you fail to meet any of these initial filing requirements set out in Regulation 10.113(9), you have no right to expect and the University has no obligation to provide any processing of the Grievance.**

Submitted on a behalf of
USF Health Senior Vice President
Charles J. Lockwood, MD, MHCM
Senior Vice President, USF Health
Dean, USF Health Morsani College of Medicine

Olga J. Joanow, JD
Director, Faculty Relations

cc:     Charles J. Lockwood, MD, MHCM
        Kevin Sneed, PharmD, Dean, College of Pharmacy
        Faculty Affairs
        Office of the General Counsel

Attachments 1-4

Attachment 1

 **UNIVERSITY OF SOUTH FLORIDA**

President's Office
Diversity, Inclusion and Equal Opportunity Office
ALN 172●974-4373
Fax 974-4375

## MEMORANDUM

**DATE:**     September 1, 2015

**TO:**       Charles Lockwood
            Senior Vice President of Health and Dean of the Morsani College of Medicine

            Kevin Sneed, Dean
            College of Pharmacy

**FROM:**     Camille Blake, Director of EO and Compliance  *Camille Blake*
            Diversity, Inclusion and Equal Opportunity Office

**SUBJECT:**  Fact Finding Report for DIEO Case #2015-420

The Fact Finding Report for DIEO Case #2015-420 has been completed and is attached.

The allegation of race discrimination made by Dr. Shu-Feng Zhou against Dr. Robert Deschenes has been dismissed by the Diversity, Inclusion and Equal Opportunity Office as Dr. Zhou did not present enough information to meet the elements of a prima facie case for racial discrimination. Therefore, no further investigation will be conducted by the DIEO Office.

The second allegation made by Dr. Zhou appears to be outside the jurisdiction of the DIEO Office. The College is free to address the allegation as it deems appropriate.

If you would please share the Fact Finding Report with both Dr. Zhou and Dr. Deschenes.

The DIEO Office will close this case. If you have any questions about the report, please do not hesitate to contact me at (813)974-3906.

Attachment 1

## DIVERSITY, INCLUSION AND EQUAL OPPORTUNITY OFFICE

### FACT FINDING REPORT

DIEO Case Number:                                    2015-420

### JURISDICTIONAL ITEMS

| | |
|---|---|
| DATE OF ALLEGED CONDUCT: | 2011 and 2013-2015 |
| DATE ALLEGATION WAS FILED WITH DIEO: | April 14, 2015 |
| DIEO AUTHORITY: | University of South Florida's (USF) Diversity and Equal Opportunity Policy #0-007 |
| COMPLAINANT: | Shu-Feng Zhou, Associate Dean for International Research, and Chair of the Department of Pharmaceutical Science, College of Pharmacy |
| RESPONDENT: | Robert Deschenes, College of Medicine Associate Dean of Research |
| BASIS: | Race Discrimination and a Non-Protected Category Allegation |

The Diversity, Inclusion and Equal Opportunity (DIEO) Office has completed its fact finding review. This report summarizes the information that was gathered.

### INTRODUCTION

The DIEO Office received on April 14, 2015 a request from the Morsani College of Medicine and the College of Pharmacy to investigate two allegations that were made in an email dated April 13, 2015 from Shu-Feng Zhou, Associate Dean for International Research, to Robert Deschenes, College of Medicine Associate Dean of Research. In this email, Zhou alleged that Deschenes racially discriminated against him. Also, in this same email, Zhou wrote the following statement "I remind you to recall what you have done to a 16-year old Chinese lady in China on March 8 2011 when you traveled there on behalf of USF Health. I am sure you will get fired in 10 days if China government reports this to our president Judy Genshaft and our governor Rick Scott." *Investigator's Note: This statement is written exactly as it appears in the email.*

The purpose of the DIEO Office's fact finding was to determine if there was substantiation to the allegation of racial discrimination and to determine what specific allegation Zhou was making against Deschenes with respect to the 16 year old Chinese lady.

### SCOPE OF AUTHORITY

University of South Florida's Diversity and Equal Opportunity Policy prohibits any employee or student from discriminating against or harassing another employee or student with regard to an

1

individual's race, color, marital status, sex, religion, national origin, disability, or age. University rules prohibit discrimination or harassment because of an employee's sexual orientation.

The DIEO Office serves as an objective fact-finding body evaluating evidence, information and credibility to make a determination as to whether USF's equal opportunity policies have been violated.

## SCOPE OF INVESTIGATION

During the course of this fact finding, the DIEO Office interviewed the following individuals:

Shu-Feng Zhou          Complainant
Kevin Sneed            Witness

In addition, the DIEO Office reviewed all documentation provided. All relevant factual information obtained in this fact finding was reviewed and considered in its entirety. Some of the factual information has been summarized for the purposes of this report.

## ALLEGATIONS

This Investigator interviewed Zhou on June 12, 2015. This Investigator showed Zhou the email dated April 13, 2015 that he emailed to Deschenes that had the allegation of racial discrimination and the statement regarding the "16 year old Chinese lady in China." This Investigator gave Zhou an opportunity to review the email.

Racial Discrimination Allegation

Zhou stated that he has known Deschenes for four to five years. Zhou stated that they used to be good friends. About two years ago, they had an argument about how to supervise a Ph.D. student. Zhou stated that this strained their positive working relationship. After this argument, over the past one to two years, Deschenes has "attacked" Zhou two to three times in front of the Dean of the College of Pharmacy Kevin Sneed.

This Investigator asked Zhou what he meant by Deschenes "attacking" him. Zhou stated that he felt that Deschenes influenced Sneed to push him to obtain grants and criticized him in front of the dean (referring to Dean Sneed). According to Zhou, this has put great work based pressure on him (Zhou). Zhou stated that he would not have been angry if Deschenes had come to him directly instead of going through his dean (i.e. Dean Sneed). Zhou stated that he told Sneed that if he (Zhou) were white that Deschenes would not have treated him that way.

This Investigator asked about the work environment with respect to obtaining grants and if he was the only one asked to obtain grants. Zhou stated that the culture is that everyone has to get a grant and everyone is under pressure.

2

This Investigator asked Zhou to explain why he thought Deschenes was discriminating against him because of his race. Zhou stated that there are a lot of professors who are Indian or Black in the College of Pharmacy, but he is the only professor with Chinese ancestry.

<u>16 year old Chinese Lady in China Allegation</u>

This Investigator asked Zhou to explain what he meant when he wrote in the email to Deschenes "I remind you to recall what you have done to a 16-year old Chinese lady in China on March 8 2011 when you traveled there on behalf of USF Health. I am sure you will get fired in 10 days if China government reports this to our president Judy Genshaft and our governor Rick Scott." Zhou explained that in the past two years he received more than ten calls from police in China who were conducting an investigation. The police told him that an incident happened in the city of Shumde in Juamgdomg (Zhou described Juamgdomg as being equivalent to a state in the U.S.) around March 8, 2011 involving a 16 year old girl.

The police wanted to know about the activities of Deschenes, Sneed and Zhou when they had been in China. Zhou stated that he asked the police what the incident was about, however the police would not divulge any specifics. Zhou then told the police that if they do not have any evidence then they are not to bother him anymore. Zhou stated that he did not tell the police what their (i.e. Sneed, Deschenes, and Zhou) activities were when they were in China. Zhou stated that the last call he received from the police from China was approximately in March 2015.

Zhou stated that he followed-up with a senior officer in China that he knew to see what the status of the case was. The senior officer told him that he could not find any records about the investigation or the case.

This Investigator asked Zhou if he had any specific knowledge of Deschenes having done anything inappropriate during his time in China. Zhou stated that he did not have knowledge of Deschenes doing anything inappropriate while Deschenes was in China.

<u>Witness' Statement:</u>

During the course of this fact finding, I interviewed the following individual. The following is an excerpt from the witness' statement. The full statement is in the DIEO Office file.

**Kevin Sneed**, Dean, College of Pharmacy

Sneed stated that Zhou has not had much success acquiring a NIH grant and he (Sneed) has been pushing him for the past two years to increase his NIH grant submissions. Sneed stated that Deschenes has been pushing to remove lab space from non-productive researchers. Obtaining a grant is one way to show productivity. Sneed stated that he and Deschenes have been working on creating a metric system for evaluating lab productivity because lab space is a finite resource within the building. Sneed stated that although he (Sneed) has been pushing Zhou, Deschenes has advocated for Zhou.

Regarding the situation involving supervising a Ph.D. student, Sneed stated that Deschenes felt that Zhou was not providing good mentorship to a Ph.D. student. Late 2014, Deschenes unleashed a tirade on Zhou in front of their peers that was based on Deschenes' perception that Zhou was not providing good mentorship. Sneed spoke with Deschenes and they agreed that Deschenes would be removed from the Ph.D. student's committee.

Regarding the "16-year old Chinese lady in China" statement, Sneed stated that either late 2011 or early 2012 he, Deschenes and Zhou were in China together on USF business. At the time, neither Deschenes nor Zhou indicated that something had happened and Sneed did not recall being anywhere where there were minors. This Investigator asked if there were times when they were alone as in not in each other's presence. Sneed stated that there were times they were by themselves. Sneed stated that all three went on a second trip to China in 2013. Sneed left early from that trip leaving Deschenes and Zhou in China an extra three to four days.

## ANALYSIS

### Race Discrimination Allegation

It does not appear to this Investigator that Zhou has a basis for his allegation of race discrimination. Zhou stated that he and Deschenes were good friends for two to three years. It appears their working relationship fractured regarding a disagreement about the mentorship of a Ph.D. student. In addition, Zhou felt that Deschenes influenced Sneed to push Zhou about obtaining more grants and characterized this influencing as an "attack."

However, in speaking with Sneed, Sneed stated that he and Deschenes have been collaborating together about how to restructure the limited resource of laboratory space. This restructuring will affect more individuals who use the laboratories than just Zhou. Sneed admitted that he is pushing Zhou regarding obtaining grants but Zhou is not the only one. Zhou admitted that the culture is that everyone has to get a grant and everyone is under pressure.

Based on the information gathered, Zhou's allegation does not meet the prima facie elements for race discrimination.

### 16 year old Chinese Lady in China Allegation

Zhou stated that he did not know what the incident was about that the police in China were investigating with respect to the 16 year old Chinese lady in China. Therefore, this Investigator is unable to determine if this allegation was based on a protected category or not, or if misconduct of any kind occurred.

Based on the information gathered, this allegation appears to be outside the jurisdiction of the DIEO Office to commence an investigation.

## CONCLUSION

### Allegation of Race Discrimination

4

Based on the information gathered, there is insufficient information to support the allegation of race discrimination made by Dr. Shu-Feng Zhou against Dr. Robert Deschenes in violation of USF's Discrimination and Harassment Policy #0-007.

<u>16 year old Chinese Lady in China Allegation</u>

It appears that the allegation is outside of the DIEO Office's jurisdiction, therefore, no finding has been made as to this allegation. The College of Pharmacy and the Morsani College of Medicine may draw any reasonable conclusion from the information that they deem is appropriate and address the allegation accordingly.

_____
Camille Blake
Director of EO and Compliance

9/1/2015
Date

5



UNIVERSITY OF
SOUTH FLORIDA

Attachment 2

May 26, 2016

Delivered via email

Shu-Feng Zhou
shufengzhou2006@hotmail.com

## Re: DIEO Case #2015-564
### Notice of Dismissal

Dear Dr. Shu-Feng Zhou:

You filed a complaint with the Office of Diversity, Inclusion and Equal Opportunity (DIEO) on November 18, 2015 and amended it on December 18, 2015 in which you alleged that Kevin Sneed, Dean, College of Pharmacy discriminated and retaliated against you because you are Chinese and because he knew that you knew he had attempted to purchase the services of a prostitute when Sneed visited Guangdong Province and the City of Guiyang in China in March 2011 and April 2012 while on USF business.

In addition, you allege that on September 9, 2015 Sneed called you to his office because he had read the Fact Finding Report for DIEO Case #2015-420 and Sneed was "very angry" that this report mentioned that Sneed had been in Guangdong Province in China in March 2011 with Robert Deschenes and you. You alleged that Sneed threatened to terminate your employment and have you investigated. You allege that this culminated in Sneed giving you a Notice of Non-Reappointment dated November 16, 2015. The Notice stated that your last day of employment with USF was to be on February 14, 2016.

I have reviewed your complaint, your interview with me as well as the documentation that has been obtained. After careful review and consideration of this information, it is my determination that you have not provided sufficient information to warrant further investigation regarding the allegations made in your complaint.

### Allegation of Acquiring a Prostitute for Sneed

I interviewed you on December 16, 2015 regarding your complaint. As support of your allegation that Sneed asked you to acquire a prostitute for him, you showed me an email which you claimed was sent to you from a hospital driver in China. The email read as follows: The subject of the email was "About the two Americans' sexual service fee paid in March 2011." The email is from Biao Li to you and read as follows: "Dear Dr. Zhou, I hope you are doing well. I am writing this email because I need your help. Do you remember you ever brought two American experts to visit our hospital around March 2011? One is called Dr Kevin Sneed and another one called Dr Robert Deschenes. For hospitality reason, I arranged two young school ladies to serve these two experts after dinner. I paid each lady 800.00 Yuan for their 2 hours' sexual service for your experts. However, this year's 5-year auditing by our hospital refused my reimbursements for this fee and I have to pay this myself. I write to ask you to help me pay this. Ok? I



Attachment 2

UNIVERSITY OF
SOUTH FLORIDA

hope you understand this. Mr Chen Biao from Shunde People's Hospital, Shunde, Guangdong, China. *Investigator's Note: The wording and grammar of the email is typed above exactly as it appears in the email. The email also does not have a date.*

I asked you during our interview why Biao waited approximately four years to ask for reimbursement for the money he spent obtaining the two prostitutes. You replied that he waited so long because USF has a good relationship with the hospital in China in which Biao is employed. You stated that Biao came to you requesting reimbursement because you were the liaison. You stated that you did not report this alleged behavior by Sneed until recently because you wanted to keep a positive relationship with USF and Sneed.

The email you provided does not support your allegation that Sneed requested the services of a prostitute while in China in March 2011 and/or April 2012. It is incredulous that Biao is requesting to be paid approximately four years after he would have paid money to procure prostitution services in 2011 and three years after he would have paid money in April 2012. It is not a reasonable flow of events. Also, according to your sequence of events, you would have met Biao again in April 2012 for the same purpose of procuring prostitute services. It is extremely odd that Biao would not have requested reimbursement of his money for the March 2011 transaction at that time. In addition, the email is undated but you stated you received it in 2015. The above factors undermine the credibility of this email being authentic.

Finally, Chen Biao himself is unidentified and there is no way to determine his credibility since there is no way to question him. You have provided no information that Chen Biao actually exists and that the above email is Biao's actual statement regarding the alleged incidents.

I asked you why you did not present this email to me when you made allegations against Deschenes. You stated that you wanted to preserve your relationship with Sneed. This response undermines your allegation below of national origin discrimination. To state that you did not present this email to me because you wanted to preserve your relationship with Sneed, suggests that you had a positive relationship with Sneed that you wanted to protect/preserve. Your response to me would not make sense if you did not have a positive relationship with Sneed because then that would beg the question what type of relationship were you trying to preserve if not a positive one.

Allegation of National Origin Discrimination

During our interview, you stated that Sneed hired you into the College of Pharmacy in July 2010. I asked you what Sneed had said or done that you felt was discriminatory towards you because you are Chinese since Sneed was the person that hired you. You stated that Sneed felt you were not loyal to him because you are Chinese instead of "black." This rationale is not supported by the evidence because Sneed would have known you were not black during your hiring process. If Sneed felt you would not be loyal because you are not black, then he would not have hired you. In addition, Sneed hired you to be Chair of the Department of Pharmaceutical Sciences. Hiring you into a leadership position of Chair of a department is not the act of an individual who is discriminating against you because you are Chinese.



UNIVERSITY OF
SOUTH FLORIDA

Attachment 2

You also gave as an example of Sneed's discriminatory intent towards you because you are Chinese that two years ago Sneed said to you "American people will not lie, but Chinese people will lie." You did not provide any witnesses to this statement and the statement was allegedly made two years ago.

With regard to your overall complaint, you presented no credible information to meet the standards necessary to substantiate an allegation of discrimination or retaliation under the University's Discrimination and Harassment Policy #0-007; therefore, no further action will be taken regarding this complaint.

Thus, DIEO will close your case and there will be no further processing of your allegations.

If you have any questions, please do not hesitate to contact me at (813)974-3906.

Sincerely,

Camille Blake
Director of Equal Opportunity and Compliance

OFFICE OF DIVERSITY, INCLUSION & EQUAL OPPORTUNITY
University of South Florida • 4202 East Fowler Avenue, ALN 172 • Tampa, FL  33620
813-974-1373 (main line) • 813-974-1375 (fax) • http:// http://www.usf.edu/diversity

Attachment 3

| Current Visiting Scholars(updated on 12/11/2015) LM | | | | | | | Visa Type |
|---|---|---|---|---|---|---|---|
| # | NAME | Begin Date | End Date | Supervisor(s) | Host | | |
| Column1 | Column2 | Column3 | Column4 | Column5 | Column6 | Column7 | Column8 |
| 1 | Pan, Shiting | 3/1/2014 | 6/15/2015 | SF Zhou | Nanchang University | | |
| 2 | Li, Qing | 11/17/2014 | 11/17/2015 | SF Zhou | Daping Hospital, Third Military Medical University | 11/24/2015 | J1 |
| 3 | Ren, Tao | 11/17/2014 | 11/17/2015 | SF Zhou/Zhang G (Moffit) | Daping Hospital, Third Military University | 11/24/2015 | J1 |
| 4 | He, Sijia | 11/17/2014 | 11/17/2015 | SF Zhou | Guiyang Medical University | 11/23/2015 | J1 |
| 5 | Liu, Zheng | 12/1/2014 | 12/5/2015 | SF Zhou/Cao C | Ningxia Medical Universitry General Hospital | 11/30/2015 | J1 |
| 6 | Shang, Yuanyuan | 12/1/2014 | 12/5/2015 | SF Zhou/J Sun | Ningxia Medical Universitry General Hospital | 11/30/2015 | J1 |
| 7 | Wang, Xinyu | 12/5/2014 | 12/5/2015 | SF Zhou/Stephanie Zhou | Ningxia Medical Universitry General Hospital | | J1 |
| 8 | Yao, Ming | 12/1/2014 | 11/30/2015 | SF Zhou | Ningxia Medical Universitry General Hospital | | J1 |
| 9 | Zhang, Jingwen | 12/1/2014 | 11/30/2015 | C Cao/Y Pathak | Dalian Medical University (PhD Candidate) | | J1 |
| 10 | Wu, Jianfeng | 5/1/2015 | 11/10/2015 | SF Zhou | Foshan University | | J1 |
| 11 | Zhang, Xuehong | 12/3/2014 | 12/2/2015 | SF Zhou | Ningxia Medical Universitry General Hospital | | J1 |
| 12 | Zi, Dan | 5/28/2014 | 3/30/2016 | SF Zhou/Gerome (COM) | Guiyang Medical University | | J1 |
| 13 | Peng, Xingsheng | 12/14/2014 | 2/1/2016 | SF Zhou/S Ma (Chemistry) | Guangdong Medical College | [illegible] to 3/1/2016, but plans to leave Dec | J1 |
| 14 | Xu, Weiping | 1/15/2015 | 2/8/2016 | SF Zhou/E Haura (Moffit) | Guangdong Provincial People's Hospital | | J1 |
| 15 | Hong, Yizhu | 3/30/2015 | 3/29/2017 | SF Zhou/Cao C | Fujiang Traditional Chinese Medicine University | hired PT Tech on 11/30/2015- Dr. Cao's lab | J1 |
| 16 | Lu, Yin | 9/15/2014 | 9/14/2015 | SF Zhou/ F. Cheng | Drug Discovery & Design Cntr, Shanghai, China | Hired as Dr. Cheng's Postdoc | J1 |
| 17 | Elkateb, Heba | | | SF Zhou | Mansoura University, Egypt | only invite letter, no further info on her | |
| 18 | Narayan, Malathi | 4/2/2013 | 6/30/2015 | Dr. Jinwal | Postdoc | | J1 |
| 19 | Kazuyuki, Yamazaki | 8/1/2015 | 10/1/2015 | Dr. Pathak/ SF Zhou | 3 months(Toyota Technological Institute, Japan | | J1 |
| 20 | Zhang, Yongli | 12/1/2015 | 12/1/2016 | Zhou | Tianjin Huanhu Hospital | | J1 |
| 21 | Zhu, Qiaobua | 5/5/2014 | 5/5/2015 | Zhou | Southern Medical Univeristy, Guangdong, China | | J1 |
| 22 | Zhang, Lifang | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 23 | Zeng, Aihua | 1/5/2015 | 12/31/2015 | Zhou & Path/ Cell Biology Dept. | Guangdong Pharmaceutical University | | J1 |
| 24 | Zhang, Yi | 3/3/2014 | 9/1/2015 | | | | J1 |
| 25 | Yuan, Chunxiu | 7/31/2013 | 7/31/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 26 | Yu, Yang | 3/12/2015 | 3/1/2015 | Zhou | Guangzhou U of Chinese Medicine | | J1 |
| 27 | Wang, Yanyang | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 28 | Wang, Qingqao | 7/31/2013 | 7/31/2014 | Zhou | Guangxi University of Chinese Medicine | | J1 |
| 29 | Tang, Dongsheng | 8/1/2014 | 2/28/2015 | Zhou /Prof. Jin Q. Chen (Moffitt) | Foshan University | | J1 |
| 30 | Wang, Feng | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 31 | Wang, Jiayou | 3/6/2013 | 9/30/2014 | Zhou | Guangxi University of Chinese Medicine | | J1 |
| 32 | Ren, Baojun | 5/19/2014 | 5/5/2015 | zhou | Southern Medical Univeristy, Guangdong, China | | J1 |
| 33 | Shu, Liping | 5/5/2014 | 5/5/2015 | Zhou | Guiyang Medical University | | J1 |
| 34 | Sun, Pinghua | 3/25/2013 | 3/25/2014 | Zhou/ Moffitt postdoc | Jinan University | | J1 |
| 35 | Sun, Bo | 7/1/2014 | 6/30/2015 | Zhou | First Peoples Hosp/ China | | J1 |
| 36 | Mo, Suilin | 11/15/2013 | 11/29/2013 | Zhou | Yatsen University, Guangzhou, China | | J1 |
| 37 | Niu, Niukui | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 38 | Li, Yancong | 10/1/2012 | 10/3/2013 | Zhou | Southern Medical Univeristy, Guangdong, China | | J1 |
| 39 | Liu, Hui | 12/17/2012 | 12/14/2013 | Zhou | Hunan Normal Univsersity | hired as lab tech | J1 |
| 40 | Li, Jinping | 10/7/2013 | 10/6/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 41 | Lin, Dong | 11/30/2012 | 11/30/2013 | Zhou | Guangzhou U of Chinese Medicine | | J1 |
| 42 | Li, Ming | 5/15/2013 | 5/31/2014 | Zhou | | req ext for outside US- 9/25/2014-12/10/14 | J1 |
| 43 | Hu, Zeping | 10/1/2012 | 10/1/2015 | Zhou | | | |
| 44 | Li, Hai | 10/7/2013 | 4/19/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 45 | Cheng, Jiang | 10/7/2013 | 101/6/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 46 | Chu, Li | 8/22/2013 | 11/22/2013 | Zhou/ Cao | Tongji University | requested extention 12/13/2013 | J1 |
| 47 | Ding, Yonghui | 9/3/2013 | 9/1/2014 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 48 | Yonh, Du | 10/7/2013 | 11/7/2013 | Zhou | Ningxia Medical University General Hospital | | J1 |
| 49 | Xue, Wei | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital | invited for Pharmacy workshop | B1 |
| 50 | Shi, Abin | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital | invited for Pharmacy workshop | B1 |
| 51 | Zhao, Ming | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital | invited for Pharmacy workshop | B1 |
| 52 | Zhang, Yatong | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital | invited for Pharmacy workshop | B1 |
| 53 | Yang, Liping | 11/22/2014 | 12/14/2014 | Zhou | Beijing Hospital | invited for Pharmacy workshop | B1 |
| 54 | He, Jiajie | 7/15/2013 | 10/15/2013 | Zhou | Ningxia Medical University | 6/2/2014-8/31/2014 (extension) | J1 |
| 55 | Zhou, Zhiwei | 4/1/2013 | still here | Zhou | | hired as postdoc | J1 |
| 56 | Yin, Juanjuan | 3/6/2013 | 8/7/2015 | Zhou | | hired as research assoc. | J1 |
| 57 | Jin, Hua | 9/1/2011 | 1/10/2012 | Zhou | (Zhou's lab) - Molecular Pharm & Phys dept | hired as student asst. | |
| 58 | Li, Yuanyuan | | 8/1/2013 | Zhou | volunteer | dates on VISA 6/12/2013-6/11/2014 | |
| 59 | Zhang, Lu | 12/1/2013 | 12/1/2015 | Zhou | OPS Asst. | [illegible] | |
| 60 | Li, Guilong | | | Zhou | Postdoc | | |

| Scholars Hosted by Morsani College of Medicine | | | | | |
|---|---|---|---|---|---|
| # | NAME | Begin Date | End Date | Supervisor | Host |
| 61 | Zhou, Yanfang | [illegible] | [illegible] | Mary Zhang & Shifeng Zhou | Guangdong University of Chinese Medicine |
| | | | | | |

| Visiting Waiting for Boarding | | | | | | | |
|---|---|---|---|---|---|---|---|
| # | NAME | Begin Date | End Date | Supervisor | Host | | |
| 62 | Wang, Lisheng | 8/1/2015 | 7/31/2016 | Shufeng Zhou | Guangzhou University of Chinese Medicine | pending switching to volunteer faculty | J1 |
| | | | | | | | |

Attachment 4

**Joanow, Olga**

| | |
|---|---|
| **From:** | Jackson, Kymia |
| **Sent:** | Monday, February 01, 2016 2:26 PM |
| **To:** | Joanow, Olga |
| **Subject:** | RE: EBA - 01654 - International Research Services - Revenue |
| **Attachments:** | EBA 01654 mod.pdf |

Hi,

I don't mind at all; my response is in red.

In addition, I wanted to share with you the EBA document that outlines the activities mentioned. This EBA was approved by the Controller's Office on December 15, 2014. We did not accept any funds from visitors prior to this approval.

Kymia

A few more questions, if you don't mind:

1) Did these funds come directly from China to the USF account? See question 2

2) If the funds didn't come directly from China, where did they come from?

| Date | Name | Amount | Students | Description |
|---|---|---|---|---|
| 12/15/2014 | Beijing Hospital | $29,000 | 5 Students | Scholars deposited funds at the USF Cashier's Office |
| 01/09/2015 | Sijia He | $3,000 | | EFT from bank in China |
| 01/09/2015 | Xinsheng Peng | $3,000 | | scholar deposited funds to USF's account at Wells Fargo |
| 03/24/2015 | Yanfang Zhou | $3,000 | | scholar deposited funds to USF's account at Wells Fargo |
| 04/29/2015 | Yuzhu Hong | $3,000 | | funds sent to the lockbox in Orlando |
| | | $41,000 | | |

3) of the $12k for the 4 scholars in in January 2015, are we sure these are the only 4 people he brought to USF? I am getting the list of scholars from the DPS Office Manager and will share that as soon as I receive the information.

4) what records do we have for 8 students in Fall 2013 (as we think they were here in August/September/October time frame? I will make sure this is included in the list of scholars that I receive.

*Kymia Love Jackson*
Kymia Love Jackson, MBA, MS
Director, Office of Research and Business
College of Pharmacy
University of South Florida, MDC 30
813.974.4796

1

813.905.9890 fax
klove@health.usf.edu

Attachment 4

**From:** Joanow, Olga
**Sent:** Monday, February 01, 2016 1:05 PM
**To:** Jackson, Kymia
**Subject:** RE: EBA - 01654 - International Research Services - Revenue

A few more questions, if you don't mind:

1) Did these funds come directly from China to the USF account?

2) If the funds didn't come directly from China, where did they come from?

3) of the $12k for the 4 scholars in in January 2015, are we sure these are the only 4 people he brought to USF?

4) what records do we have for 8 students in Fall 2013 (as we think they were here in August/September/October time frame?

Thanks,
Olga

**From:** Jackson, Kymia
**Sent:** Monday, February 01, 2016 12:31 PM
**To:** Joanow, Olga
**Subject:** FW: EBA - 01654 - International Research Services - Revenue

Hi Olga,

At total of $41,000 was collected for international scholars and was deposited into the International Services EBA (fund 01654).

Of the $41,000 detailed below, $29,000 was for a week long workshop where Dr. Zhou hosted 5 scholars (information about the workshop is attached) and the remaining amount ($12,000) was charged to the visiting scholars that arrived after January 2015.

Please let me know if this helps or if more information is needed for this.

Thanks!
Kymia

*Kymia Love Jackson*

Kymia Love Jackson, MBA, MS
Director, Office of Research and Business
College of Pharmacy
University of South Florida, MDC 30
813.974.4796
813.905.9890 fax
klove@health.usf.edu

2

Attachment 4

From: Vega, Janice
Sent: Monday, February 01, 2016 11:40 AM
To: Jackson, Kymia
Subject: EBA - 01654 - International Research Services - Revenue

Hi Kymia,

These are the deposits for EBA – International Research Services

| 12/15/2014 | Beijing Hospital | $29,000 | 5 Students |
|---|---|---|---|
| 01/09/2015 | Sijia He | $3,000 | |
| 01/09/2015 | Xinsheng Peng | $3,000 | |
| 03/24/2015 | Yanfang Zhou | $3,000 | |
| 04/29/2015 | Yuzhu Hong | $3,000 | |
| | | $41,000 | |

Thank you,

*Janice M Vega*

Fiscal and Business Analyst
Office of Research and Business
College of Pharmacy
University of South Florida, MDC 30
Phone: 813-974-4895 Fax: 813-905-3980
Vega5@health.usf.edu

# USF Health Pharmacy ✚ ™

## A PRESCRIPTION FOR CHANGE

### (813) 974-0133

+ Provide Medications + Provide Knowledge + Provide Technology.

3