# UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

| | |
|---|---|
| SHUFENG ZHOU, | }<br>}<br>} |
| Plaintiff, | }<br>} |
| v. | }    Case No.: 8:17-cv-01814-RDP-UAM<br>} |
| JUDY GENSHAFT, et al., | }<br>} |
| Defendants. | } |

## MEMORANDUM OPINION

This matter is before the court on the Motion to Dismiss With Prejudice Plaintiff's Second Amended Complaint filed by Defendant University of South Florida Board of Trustees ("USF"). (Doc. # 44).

In a November 2, 2018 Order, the court set forth a briefing schedule on Defendant's then-anticipated renewed Motion to Dismiss, including a deadline for Plaintiff to respond to any such Motion. (Doc. # 42 at 2). Pursuant to the November 2, 2018 Order, Plaintiff's response to Defendant's anticipated Motion to Dismiss was due on or before January 25, 2019. (Doc. # 42 at 2 ("To the extent Defendant's response to Plaintiff's amended complaint is a motion to dismiss, Plaintiff **SHALL** respond to any such motion **on or before January 25, 2019**.") (emphasis in original).

Plaintiff did not respond to Defendant's Motion by the court-imposed deadline. Therefore, the court issued an order requiring Plaintiff to show cause why the court should not consider Defendant's Motion to be unopposed. (Doc. # 45). In that order, the court noted Plaintiff's history of failing to comply with court orders and warned that "**FAILURE TO**

**SHOW GOOD CAUSE MAY RESULT IN DISMISSAL OF PLAINTIFF'S CLAIMS FOR FAILURE TO PROSECUTE**." (Doc. # 45).

After receiving the court's Order to show cause why he had not responded to Defendant's Motion, and in response to Defendant's Motion, on March 4, 2019, Plaintiff filed a cursory, one page response. (Doc. # 46). Plaintiff did not address his failure to respond to Defendant's Motion in a timely manner. (*Id.*). Rather, Plaintiff simply maintained he was treated differently because of his race. (*Id.*).

In its Motion, Defendant argues that Plaintiff's Second Amended Complaint is due to be dismissed because (1) the Second Amended Complaint does not comply with the pleading requirements of Rule 8 as it does not contain a short and plain statement of any claim showing that the Plaintiff is entitled to relief; and (2) the Second Amended Complaint does not allege sufficient facts to state a plausible claim upon which relief may be granted against the Defendant. (Doc. # 44 at 1). Defendant seeks dismissal with prejudice because the Plaintiff has been allowed four opportunities to state a claim that is cognizable under any theory of law, but he has failed to do so. (Doc. # 44 at 2-3 (citing Docs. # 1, 9, 34; Case No. 8:16-cv-03104-UAM, Doc. # 1)).

**I.      Background and Procedural History**

The facts are gleaned from the documents filed by Plaintiff which the court has construed as "Complaints," as well as the materials filed by Plaintiff with his "Complaints." The court is required to accept all allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor. *St. George v. Pinellas Cty.*, 285 F.3d 1334, 1337 (11th Cir. 2002). Because the chronology of events in this case is important, the court includes the dates that certain events occurred.

On April 13, 2015, Plaintiff sent an e-mail to Dr. Robert Deschenes, the Chair of USF's Department of Molecular Medicine, College of Medicine, copying Dr. Kevin Sneed, the Dean of USF's College of Pharmacy. (Doc. # 43 at 16-17). The subject of the e-mail was "About your negative comments on my performance and other things." (Doc. # 43 at 16). Plaintiff wrote "I am writing about [Deschenes's] highly negative comments/complaints on my research performance" that were made to Sneed, Plaintiff's dean. (*Id.*). Plaintiff notes that Deschenes had "complained about [him] to Dr. Sneed several times since last August [2014]." (*Id.*). Plaintiff accused Deschenes of having an "ultimate goal" of having "USF fire [Plaintiff]." (*Id.*). Plaintiff wrote that he was aware his relationship with Deschenes "had been broken since last August when [they] had an argument about the authorships for one of [Plaintiff's] papers published in Toxicology." (*Id.*). Plaintiff then stated "Now you are going too far. But please stop[] attacking me like a racist!" (*Id.*).

In the e-mail, Plaintiff "reminded" Deschenes of an incident with a "16-year old Chinese lady" in 2011, and stated "I am sure you will get fired in 10 days if China government reports this to [USF] president Judy Genshaft and our governor Rick Scott." (*Id.*). Plaintiff concludes the e-mail by saying "Let's entertain our fighting!" (*Id.*).

USF's Diversity, Inclusion and Equal Opportunity Office conducted an investigation into the allegations in Plaintiff's April 13, 2015 e-mail. (Doc. # 43 at 9-13). As part of their investigation, the DIEO office interviewed Plaintiff and Sneed. (Doc. # 43 at 10).

In his interview, Plaintiff reported that he and Deschene had been friends until about 2013, when they had a disagreement about the supervision of a Ph.D. student. (Doc. # 43 at 10). Plaintiff complained that Deschenes had "influenced Sneed to push [Plaintiff] to obtain grants" and had criticized him in front of Sneed. (Doc. # 43 at 10). Plaintiff asserted that he had told

Sneed that if he (Plaintiff) were white, Deschenes would not have treated him that way. (*Id.*). However, Plaintiff also reported to the DIEO investigator that the "culture" is that everyone had to get a grant and everyone is under pressure. (*Id.*). Plaintiff explained that he thought he was being discriminated against because, although there are many black and Indian professors in the College of Pharmacy, he is the only Chinese professor. (*Id.*). During that interview, Plaintiff reported that he had no knowledge of Deschenes doing anything inappropriate in China. (*Id.*).

On November 16, 2015, Sneed met with Plaintiff and provided him a letter containing "formal notice of [his] non-reappointment from [his] position [with USF]." (Doc. # 1 at 9-10, 18-19). Plaintiff's non-reappointment was effective February 14, 2016. (Doc. # 1 at 10, 18). The letter cited USF Regulation 10.110(3) as the basis for the non-reappointment. (Doc. # 1 at 18). Plaintiff refused to sign the letter. (Doc. 1 at 10). Plaintiff told Sneed that he thought it was "very unfair, discriminatory and retaliatory." (*Id.*).

On November 18, 2015, Plaintiff formally initiated an internal grievance appeal of his non-reappointment. (*Id.*). In his grievance letter, Plaintiff "highlighted that Dr. Sneed was making bad retaliation against [Plaintiff] since [Plaintiff] knew of his illegal and shameful prostitute buying behaviors" when he visited China in 2011 and 2012." (*Id.*). Plaintiff reported that Sneed had been angry with him on September 9, 2015, because Sneed thought Plaintiff would expose his alleged behavior. (*Id.*). Also on November 18, 2015, Plaintiff complained to the Florida Commission of Human Rights. (*Id.*).

On November 22, 2015, Plaintiff reported to the USF President and Provost that Sneed had engaged in misconduct in China in 2011. (*Id.*).

The next day, on November 23, 2015, Plaintiff was shown a letter which instructed him to work from home and restricted his access to USF and its resources. (*Id.*). The letter also

4

instructed Plaintiff about his assignments for the remainder of his employment with USF and informed him that his office was being reassigned. (Doc. # 1 at 20).

On November 29, 2015, Plaintiff filed a complaint against Dr. John Curran, the Associate Vice President for Faculty and Academic Affairs, who was a signatory on both the November 16, 2015 non-reappointment letter and the November 23, 2015 letter reassigning Plaintiff's office. (Doc. # 1 at 18-21). Plaintiff's complaint was titled "Complaining about Senior Associate Vice President Dr. John Curran's bad persecution and discrimination against me." (Doc. # 1 at 21).

On November 30, 2015, Lockwood, the Dean of the College of Medicine, issued Plaintiff a reprimand letter. (Doc. # 1 at 24-25). Lockwood determined that Plaintiff "appear[s] to have made allegations against colleagues to coerce management to take certain employment actions, absent due process." (Doc. # 1 at 24). Lockwood further noted that, on November 17, 2015, the day after he was notified of his non-reappointment, Plaintiff presented to Sneed "an undated e-mail from a contact in China referencing [alleged] salacious conduct by Dr. Sneed and Dr. Deschenes." (*Id.*). Lockwood reported that Sneed had informed him (Lockwood) that Plaintiff "threatened to share the e-mail with [Lockwood], *unless* [Plaintiff] was given more time relative to his non-reappointment." (*Id.*) (emphasis in original).

On February 18, 2016, Lockwood sent a letter to Plaintiff titled "Notice of Intent to Terminate Employment for Cause." (Doc. # 1 at 41). This letter informed Plaintiff that, based on a review of materials left in his USF office and his USF computer and e-mail, it appeared that Plaintiff engaged in a "high level of outside activities, which were not disclosed and that appear to present clear conflicts of interest." (*Id.*). The remainder of the letter detailed the conflicts,

which included, among other things, undisclosed outside employment, including consulting work for Chinese hospitals and the Chinese government. (Doc. # 1 at 44-45).

In a letter dated March 4, 2016, Plaintiff alleged that other USF employees had engaged in misconduct. (Doc. # 1 at 48-51). However, the letter did not dispute the conflicts of interest set forth in Lockwood's February 18, 2016 letter. (*Id.*).

On March 24, 2016, Lockwood issued Plaintiff a "Notice of Termination of Employment for Cause." (Doc. # 1 at 52). Plaintiff responded to his Termination for Cause and asked USF to "reconsider its disciplinary decision against [him]." (Doc. # 1 at 67-68). USF concluded that Plaintiff had initiated its grievance process. (Doc. # 1 at 69).

On May 26, 2016, the DIEO reported to Plaintiff on its investigation of his November 18, 2015 complaint of discrimination. (Doc. # 1 at 79-81). The DIEO found that Plaintiff had "presented no credible information [] to substantiate an allegation of discrimination or retaliation." (Doc. # 1 at 81). Therefore, it closed its case on his complaint. (*Id.*).

On June 23, 2016, USF upheld Plaintiff's termination at the end of Step 1 of the grievance process. (Doc. # 1 at 71-71).

On November 3, 2016, Plaintiff sued USF and other individual defendants. (*Zhou v. Genshaft et al.*, Case No. 8:16-cv-03104-RDP-UAM, Docs. #1). That case was dismissed due to Plaintiff's failure to prosecute. (Case No. 8:16-cv-03104-RDP-UAM, Docs. # 20, 21).

On July 21, 2017, Plaintiff filed this case asserting what appear to be the same claims the court dismissed in his 2016 case. (Doc. # 1). On August 8, 2017, Plaintiff filed an Amended Complaint. (Doc. # 9). On September 8, 2017, Defendants filed a motion to dismiss. (Doc. # 27).

Plaintiff's response to Defendants' Motion to Dismiss was due on September 22, 2017. (Doc. # 28). As of January 11, 2018, Plaintiff had not responded to Defendant's Motion. (Doc. #

28). On January 11, 2018, the court ordered Plaintiff to "SHOW CAUSE in writing as to why Defendants' motion should not be considered without his response." The Order further notified Plaintiff that "[f]ailure to do so [would] result in the Court considering Defendants' motion to be unopposed." (*Id.*). Plaintiff responded to the Show Cause order with what the court construed as a Motion to Recuse. (Doc. # 29). Nonetheless, the court ordered Plaintiff to respond to Defendants' Motion to Dismiss on or before February 14, 2018. (Doc. # 30).

On February 13, 2018, Plaintiff finally responded to Defendants' Motion. (Doc. # 31). In that response, the Plaintiff asserted that Defendants' Motion was "unfair." (Doc. # 31 at 1). He further argued that USF "threatened to terminate [his] employment with USF only because I have lawfully complained to USF president and other authorities about [] misconduct and prostitute buying behaviors in 2011 and 2012 []." (*Id.*). Plaintiff also referenced his rights under the Fourth Amendment of the U.S. Constitution, and indicated that he "totally disagree[d]" with the "charges against [him]." (*Id.*).

On April 4, 2018, the court dismissed (1) Plaintiff's Title VII and ADA claims against the individual defendants and (2) Plaintiff's ADA claims against USF seeking money damages. (Doc. # 34). The court set a hearing on the remaining aspects of Plaintiff's Title VII claim and his ADA claim seeking reinstatement. (*Id.*). Due to Plaintiff's unavailability (he had apparently moved back to China) and also due to the court's own schedule, the court was unable to conduct the hearing until November 1, 2018. (Docs # 35, 37-40). At the hearing, the court gave Plaintiff explicit instructions about his responsibility to respond to any motion to dismiss. As a result of matters occurring during the November 1, 2018 hearing, the court denied the remaining portions of Defendants' Motion to Dismiss without prejudice, and allowed Plaintiff yet another opportunity to replead his claims. (Doc. # 42). The court gave Plaintiff explicit instructions about

how to properly plead his claims at the hearing as well as in the order issued following the hearing. (Doc. # 42).

The court construes the filings currently before it as Plaintiff's Second Amended Complaint, Defendant's Motion to Dismiss, and Plaintiff's Response to Defendant's Motion. (Docs. # 43, 44 and 46). Plaintiff's Second Amended Complaint consists of two typed pages. (Doc. # 43). He also has attached his April 13, 2015 e-mail to Deschenes, and the DIEO's file recording its investigation into the complaints Plaintiff made in his April 13, 2015 e-mail. (Doc. # 43).[1]

In his Second Amended Complaint, Plaintiff asserts that USF and/or Sneed unlawfully fired him on November 17, 2015 because of his race and in retaliation for complaining about his co-workers' alleged misconduct in China. (Doc. # 43 at 2).

## II.     Standard of Review

The Federal Rules of Civil Procedure require that a complaint provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). However, the complaint must include enough facts "to raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  A pleading that contains nothing more than "a formulaic recitation of the elements of a cause of action" does not meet Rule 8 standards, nor do pleadings suffice when they are based merely upon "labels and conclusions" or "naked assertion[s]" without supporting factual allegations. *Id.* at 555, 557.  In deciding a Rule 12(b)(6) motion to dismiss, courts view the allegations in the complaint in the light most favorable to the non-moving party. *Watts v. Fla. Int'l Univ.*, 495 F.3d 1289, 1295 (11th Cir. 2007).

---

[1] At the motion to dismiss stage, "the court limits its consideration to the pleadings and exhibits attached thereto." *GSW, Inc. v. Long Cty.*, 999 F.2d 1508, 1510 (11th Cir. 1993).

To survive a motion to dismiss, a complaint must "state a claim to relief that is plausible on its face." *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Although "[t]he plausibility standard is not akin to a 'probability requirement,'" the complaint must demonstrate "more than a sheer possibility that a defendant has acted unlawfully." *Id.* A plausible claim for relief requires "enough fact[s] to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Twombly*, 550 U.S. at 556.

Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions. *Iqbal*, 556 U.S. at 678. Similarly, "unwarranted deductions of fact" in a complaint are not admitted as true for the purpose of testing the sufficiency of the plaintiff's allegations. *Aldana v. Del Monte Fresh Produce, N.A., Inc.*, 416 F.3d 1242, 1248 (11th Cir. 2005); *see also Iqbal*, 556 U.S. at 681 (stating conclusory allegations are "not entitled to be assumed true").

In considering a motion to dismiss, a court should "1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, 'assume their veracity and then determine whether they plausibly give rise to an entitlement to relief.'" *Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (quoting *Am. Dental Ass'n v. Cigna Corp.*, 605 F.3d 1283, 1290 (11th Cir. 2010)). That task is context specific and, to survive the motion, the allegations must permit the court based on its "judicial experience and common sense . . . to infer more than the mere possibility of misconduct." *Iqbal*, 556 U.S. at 679. If the court determines that all of the well-

pleaded facts, accepted as true, do not state a claim that is plausible, the claims are due to be dismissed. *Twombly*, 550 U.S. at 570.

The court fully understands that *pro se* pleadings are to be construed liberally. *Evans v. Ga. Reg'l Hosp.*, 850 F.3d 1248, 1253 (11th Cir.), *cert. denied*, 138 S.Ct. 557 (2017). However, liberal construction of *pro se* pleadings "does not give a court license to serve as *de facto* counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action." *Campbell v. Air Jamaica Ltd.*, 760 F.3d 1165, 1168–69 (11th Cir. 2014) (quotation marks omitted).

### III. Analysis

Plaintiff's Second Amended Complaint consists of two typewritten pages with attachments. (Doc. # 43). Plaintiff's typed summary alleges that, on November 17, 2015, Sneed on behalf of USF fired him "because of retaliation and discrimination." (Doc. # 43 at 2). Plaintiff alleges that the retaliation was prompted by his April 15, 2015 e-mail in which he "complained about [Deschenes's] improper and rude behaviors against me and his [] misconduct [in China in 2011 with young Chinese girls]." (*Id.*). Plaintiff alleges that Sneed met with him on September 9, 2015, and "was very angry at [Plaintiff] because [the DIEO] report mentioned him being in China in March 2011 together with [] Deschenes." (*Id.*). Plaintiff alleges that after he was informed of his termination, he "complained about the bad discrimination and retaliation against me to" USF's President and Provost. (*Id.* at 3).

#### A. Plaintiff's Discrimination Claim under Title VII

Title VII "prohibits an employer from discriminating against an employee 'because of such individual's race, color, religion, sex, and national origin.'" *Univ. of Texas Sw. Med. Ctr. v. Nassar*, 570 U.S. 338, 338 (2013) (quoting 42 U.S.C. § 2000e–3(a)). Absent direct evidence of discrimination, a plaintiff can prove discrimination by circumstantial evidence using the familiar

*McDonnell Douglas* burden-shifting framework, see *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Under this framework, the plaintiff raises an inference of discrimination by establishing a prima facie case, showing (1) that the plaintiff is in a protected class, (2) was qualified for the job, (3) suffered an adverse employment action, and (4) that the employer treated similarly situated employees outside the protected class more favorably. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008). A plaintiff can also survive summary judgment by showing the existence of a "convincing mosaic of circumstantial evidence that would allow a jury to infer intentional discrimination by the decisionmaker." *Smith v. Lockheed-Martin Corp.*, 644 F.3d 1321, 1328 (11th Cir. 2011).

Plaintiff's Second Amended Complaint fails to state a plausible discrimination claim. Although there are allegations to support the first three elements of a traditional prima facie case, Plaintiff has failed to plausibly allege any facts showing a discriminatory bias. Plaintiff has not alleged that he was similarly situated to a non-Chinese employee who was treated differently. Nor has he pleaded any facts indicating bias against him because he is Chinese. Indeed, Plaintiff has pleaded nothing but conclusory allegations. He accused Deschenes of being a racist; but, that assertion is wholly conclusory and unsupported by any factual allegations. (Doc. # 43 at 4-5). Plaintiff also alleges that there was "bad discrimination and retaliation" against him; but, again, that is a naked assertion without any pleading facts supporting it.

In short, given the woefully conclusory allegations found in Plaintiff's Second Amended Complaint, the court is compelled to conclude that Plaintiff has not alleged sufficient facts to proceed on a claim of Title VII discrimination, despite being given numerous opportunities to do so.

### B. Plaintiff's Retaliation Claim under Title VII

Title VII also prohibits an employer from retaliating against an employee for opposing an unlawful employment practice. *See Porter v. Am. Cast Iron Pipe Co.*, 427 Fed.Appx. 734, 36 (11th Cir. 2011). In the absence of direct evidence, claims of retaliation under Title VII often proceed under the *McDonnell Douglas* burden shifting framework. *Jackson v. Geo Group, Inc.*, 312 Fed.Appx. 229, 233 (11th Cir. 2009). To establish a Title VII claim based on circumstantial evidence, the plaintiff must show: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there is a causal connection between the two events. To establish the requisite causal connection, the plaintiff must, at a minimum, show that the decisionmaker was aware of his protected conduct, and that the protected activity and the adverse action were not wholly unrelated. *McCann v. Tillman*, 526 F.3d 1370, 1376 (11th Cir. 2008), *cert. denied*, 129 S. Ct. 404 (2008).

Plaintiff's Second Amended Complaint alleges that in April 2015, he complained about Deschenes's "rude behaviors" and misconduct. (Doc. # 43 at 2). It further alleges that, in September 2015, Sneed was very angry that Plaintiff had made allegations to USF that Sneed engaged in misconduct with young women in China in 2011. (*Id.*). Plaintiff further alleges that because of his allegations about what occurred in China, Sneed threatened to fire him. (*Id.*). Plaintiff was notified of his non-reappointment (termination) by letter dated November 16, 2015. (Doc. # 1 at 18). According to Plaintiff's Second Amended Complaint, on November 17, 2015, the following day, Plaintiff complained to Sneed that he was a "bad retaliator and discriminator." (Doc. # 43 at 2). Also on November 17, 2015, Plaintiff alleges that he "complained about the bad discrimination and retaliation against [him] to [USF's] President [] and Provost []." Doc. # 43 at

2-3). A careful review of Plaintiff's allegations shows he has not plausibly alleged any claim of retaliation.

First, it is not at all clear that Plaintiff's April 13, 2015 e-mail constitutes protected conduct under Title VII or any other anti-discrimination law. However, because it does accuse Deschenes of "attacking [Plaintiff] like a racist" (Doc. # 43 at 4), for purposes of evaluating whether Plaintiff has stated a claim of retaliation, the court assumes without deciding that the e-mail constitutes protected conduct.

Second, although Plaintiff conclusorily alleges that Sneed learned of the DIEO's investigation into the assertions Plaintiff made against him in September 2015, the court notes that Plaintiff copied Sneed on his original April 13, 2015 e-mail. (Doc. # 43 at 2-4). Therefore, as of April 13, 2015, Sneed knew that Plaintiff had made those accusations against him. (*Id.*).

Third, on November 17, 2015, when Plaintiff notified USF's President and Provost that he was a victim of "bad discrimination and retaliation," he had already been notified of his non-reappointment by letter dated November 16, 2015. (Doc. # 43 at 2-3). Plaintiff's own allegations in this case (including the documents he has incorporated into his pleadings) make clear that the decisionmakers recommending Plaintiff's non-reappointment could not have been aware of this complaint (it had not even yet occurred) when they decided not to reappoint Plaintiff.

Fourth, Plaintiff's other allegations regarding why USF did not reappoint him relate to either Sneed or Deschenes being upset that Plaintiff had accused them of misconduct with young Chinese girls in 2011. But Plaintiff's accusations of inappropriate conduct in China simply are not statutorily protected activity within the meaning of Title VII. Therefore, they cannot form the basis for a retaliation claim.

Fifth, to be clear, this is not simply a case where there are no facts alleged in the operative pleading which plausibly suggest (or allow a reasonable inference) that Plaintiff's non-reappointment was in retaliation for any Title VII-protected conduct. That is, Plaintiff has not alleged the existence of any fact making a plausible causal connection between USF's actions in November 2015 and his April 13, 2015 e-mail calling Deschenes a racist. But, even if he could do so, timing is not on Plaintiff's side: there was a seven month period between Plaintiff's April 13, 2015 e-mail and the November 16, 2015 letter informing him of his non-reappointment. "The time period between an employee's protected activity and an employer's adverse action often figures prominently in a determination whether the employee's act caused the employer's reaction." *Clark v. S. Broward Hosp. Dist.*, 601 Fed.Appx. 886, 897 (11th Cir. 2015). "The cases that accept mere temporal proximity between an employer's knowledge of protected activity and an adverse employment action as sufficient evidence of causality to establish a prima facie case uniformly hold that the temporal proximity must be 'very close.'" *Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (citing *Neal v. Ferguson Constr. Co.*, 237 F.3d 1248, 1253 (10th Cir. 1997); *see also Thomas v. Cooper Lighting, Inc*., 506 F.3d 1361, 1364 (11th Cir. 2007 (stating that a three to four month disparity between the statutorily protected expression and the adverse employment action was insufficient to show causation). Here, the timing is not close enough.

The "facts" alleged in the Second Amended Complaint, taken together with the documents submitted by Plaintiff, do not plausibly allege that Plaintiff's non-reappointment was causally related to any complaints of discrimination. At best, the documents show a pattern of complaints by Plaintiff made after criticism of Plaintiff's performance. Therefore, Plaintiff has

not plausibly alleged sufficient factual detail, as opposed to conclusory allegations, to state a retaliation claim under Title VII.

### C. Plaintiff's Disability Discrimination Claim

"In order to establish a claim under the ADA, a plaintiff must allege a disability." *Chapman v. U.S. Postal Serv.*, 442 Fed.Appx. 480, 484 (11th Cir. 2011). To state a disability discrimination claim under the ADA, Plaintiff must minimally allege facts showing that he has a "disability" which is "a physical or mental impairment that substantially limits one or more major life activities of [the] individual," "a record of such an impairment," or "being regarded as having such an impairment." 42 U.S.C. § 12102(1)(A)-(C). Plaintiff's Second Amended Complaint is devoid of any allegations regarding an alleged disability. Nor has Plaintiff alleged that any USF employee harbored a discriminatory animus against people with disabilities, or in any way regarded him as disabled. Therefore, Plaintiff has not alleged a plausible claim of disability discrimination.

### IV. Conclusion

For all of the foregoing reasons, the court concludes that Plaintiff has failed to allege sufficient facts to state a claim under Title VII for discrimination or retaliation, or any claim under the ADA, that is plausible on its face. Accordingly, Defendant USF's Motion to Dismiss With Prejudice (Doc. # 44) is due to be granted. A separate order will be entered.

**DONE** and **ORDERED** this April 16, 2019.

_____
**R. DAVID PROCTOR**
UNITED STATES DISTRICT JUDGE